IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )
                                   )
          v.                       )   No. 1:23-cr-00254-MC
                                   )
NEGASI ZUBERI,                     )
                                   )
          Defendant.               )

Telephonic Status Hearing

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL J. McSHANE

CHIEF UNITED STATES DISTRICT COURT JUDGE

June 26, 2024

```
 1                          APPEARANCES

 2

 3    FOR THE PLAINTIFF:

 4            JEFFREY SWEET
              United States Attorney's Office
 5            405 E. Eighth Avenue
              Suite 2400
 6            Eugene, Oregon 97401

 7    FOR THE PLAINTIFF:

 8            NATHAN J. LICHVARCIK
              United States Attorney's Office
 9            405 E. Eighth Avenue
              Suite 2400
10            Eugene, Oregon 97401

11    FOR THE PLAINTIFF:

12            MARCO BOCCATO
              United States Attorney's Office
13            310 W. Sixth Street
              Medford, Oregon 97501
14

15    FOR THE PLAINTIFF:

16            SUZANNE A. MILES
              United States Attorney's Office
17            1000 S.W. Third Avenue
              Portland, Oregon 97204
18

19    FOR THE DEFENDANT:

20            AMY ELIZABETH POTTER
              Angeli Law Group LLC
21            121 S.W. Morrison Street
              Suite 400
22            Portland, Oregon 97204

23

24

25
```

```
 1   FOR THE DEFENDANT:

 2            MICHAEL BERTHOLF
              Law Offices of Michael P. Bertholf, LLC
 3            108 Mistletoe Street
              Medford, Oregon 97501
 4

 5   COURT REPORTER:   Lindsey A. Weresch, RMR, CRR, CSR
                       United States District Courthouse
 6                     1000 S.W. Third Avenue, Room 301
                       Portland, Oregon 97204
 7                     (503)326-8047

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      (Wednesday, June 26, 2024, 3:19 p.m.)

2                    P R O C E E D I N G S

3            (Whereupon, the following proceedings were held in

4      open court:)

5            THE COURTROOM DEPUTY CLERK:  Now's the time set for

6      Criminal Case Number 23-254, the United States of America

7      versus Negasi Zuberi, for a status hearing.

8            THE COURT:  All right.  Who do I have representing

9      the Government?

10           MR. SWEET:  Good afternoon, Your Honor.  Jeff Sweet,

11     Nathan Lichvarcik, Suzanne Miles and Marco Boccato for the

12     United States.

13           THE COURT:  All right.  Thank you.

14           And for the defense.

15           MS. POTTER:  Amy Potter and Michael Bertholf for the

16     defense.  We're both by phone.  And Mr. Zuberi is by phone as

17     well from the Jackson County Jail.

18           THE COURT:  All right.  Mr. Zuberi, can you hear us?

19           THE DEFENDANT:  Barely.

20           THE COURT:  All right.  We'll try to speak up.

21           We do have a court reporter from Portland, so if

22     everybody could try to keep their voices up.  I'm actually in

23     the courtroom.  So let me turn it over first to the Government.

24           I did look at one e-mail, Mr. Sweet, that you sent

25     earlier today to Ms. Pew.  You might need to walk me through

some of it.  Some of it's cryptic.  Some of it I understand

better.  I understand there might be some more information as

well, but let me start with the Government.

MR. SWEET:  Thank you, Your Honor.  Yes.  The

Government's core concern is that Mr. Zuberi violated the

protective order that was issued by this Court.  And on

March -- March 13th, Your Honor, of 2024, this Court issued an

amended protective order, which is ECF number 62.  And that

specifically prevented Mr. Zuberi from disseminating or

disclosing, outside of the defense team, the names or

identifying information of AV1, AV2 or other individuals

identified in discovery as having been assaulted by Mr. Zuberi.

However, as the Court has seen -- and if I may,

Your Honor, just to confirm, is the e-mail that the Court

received -- did that include the protective order and -- that

Mr. Zuberi was attempting or had disclosed a name relating to

this case?

THE COURT:  Yes.  There's a protective order.  And it

involves, it looks like, phone conversations on June 24th at

11:17 a.m. to Ms. Westfall, and a phone conversation June 24th

at 11:23 to Ms. Westfall.

MR. SWEET:  Thank you, Your Honor.  Then I just

wanted to confirm which e-mail that was, and that's clear then.

Then, Your Honor, in that -- in that June 24th at 11:23 jail

call, Mr. Zuberi explicitly discloses the names -- the name of

1   one of the victims, a person he was convicted of assaulting.

2           He also attempted to disclose, and partially

3   disclosed, the name of one of the victims that is listed in one

4   of the kidnapping counts.  Your Honor, that is an explicit

5   violation of the protective order.  He listed one name and

6   listed part of another.  It's not a technical violation.  It's

7   a flagrant violation, because it's clear from other jail calls

8   that Mr. Zuberi's core purpose was to harass, embarrass,

9   exactly the kind of conduct that the protective order is

10  designed to protect the victims from.

11          And even after he was warned, Your Honor, by his

12  counsel, he continued.  And the second e-mail -- and I

13  apologize.  I apologize that that hasn't gone through,

14  Your Honor.  We must be having some technical difficulties.

15  But there were some additional calls that followed, Your Honor.

16          And Mr. Zuberi, even though he'd been warned about

17  disclosure, said, "Seriously make a video.  Use the names.

18  Expose these liars."  And, again, he's speaking with Ms. Alycia

19  Westfall, the mother of his children, throughout.  He's told

20  her that "They have no control over what you're doing, over

21  what you're saying.  You can say whatever you want."

22          He's encouraging her to make a video and to post it.

23  "You can expose -- I gave you the information.  You can expose

24  these prostitutes.  You don't have to know their faces.  You

25  know their names."  Your Honor, this is -- again, this goes --

this is diametrically opposed to what the Court ordered him not to do.

And then in another call, Your Honor -- you know, and some of these are lengthy. This is -- this is fast-moving -- he told Ms. Westfall to, quote, "spell the damn names," end quote, for the videos. Your Honor, Mr. Zuberi's jail call privileges to Ms. Westfall were then blocked. And I must say, Your Honor, from the calls Ms. Westfall sounds very enthusiastic about participating in this and in getting names out.

His jail call access to Ms. Westfall was blocked, which is why the defense requested the hearing today, which works well for the Government, frankly, because we were going to be requesting a hearing on this as well. After his jail call privileges were blocked to Ms. Westfall, Your Honor, he then called his mother today and had his mother do a three-way call to Ms. Westfall.

THE DEFENDANT: No, I didn't. She just did it. My mom just did the three-way call. I never asked her to. I never asked her to do it.

MS. POTTER: Mr. Zuberi, please wait until it's your turn. This is your attorney. Please do not jump in. Thank you.

MR. SWEET: Your Honor, I have not listened to today's call, and so Mr. Zuberi may well be correct that his

mother decided to do that. I understand there was concern

expressed on the call about making a three-way call and whether

that could result in his calls to his mother being blocked.

It is, in fact, a violation of jail policy to do so.

Your Honor, I'm not saying that everything that Mr. Zuberi says

on a call to Ms. Westfall is -- is inappropriate or improper.

And I understand that in his call today he tried to walk things

back. And in some earlier calls, he has tried to say, "Okay.

Wait. Don't do that. Don't say that. We can't do this."

But then he, at the same time, makes statements like,

"Make a video. Use the names. Expose these liars." So what

the Government is asking, Your Honor, is we are asking that

Mr. Zuberi's right to unsupervised access to Ms. Westfall be --

be curtailed, that he not be allowed to have -- that his jail

call access continues to be blocked, his e-mails, his video

calls and in-person visits and the same for letters.

We don't oppose them being supervised by defense

counsel or defense investigator. We're happy to discuss

details to work this out. I realize they share children. I

realize she may be a witness for the defense, and they may have

trial preparation needs. However, Your Honor, this -- this is

an urgent situation.

We are very concerned that Ms. Westfall was going to

take a video, make a video, post a video and take other actions

that would cause embarrassment and shame and potential

harassment to the victims.

We believe the Court can do this under its inherent authority and also as part of enforcing compliance with the protective order that this Court issued. I'm happy to answer any questions the Court has. But that's what we have at this time, Your Honor.

THE COURT: If you could perhaps expound on what you mean by, I guess, supervised communications with Ms. Westfall. I'm not sure -- are you -- maybe third-party contact through the attorneys or letters written to her would be reviewed by his attorneys before being forwarded?

MR. SWEET: Yes, Your Honor. That's certainly -- that's certainly one thing. And the jail -- the jail obviously will have its own procedures, in terms of copying outgoing nonlegal mail and other steps that -- that they may take. And, you know, they have their own ability to determine violations of -- of three-way calling and other things and the steps that they may take. But, yes, if a defense investigator or defense counsel are on a call with Ms. Westfall, that would allay the Government's concerns.

THE COURT: Okay. Let me hear from the defense.

THE DEFENDANT: Hello?

MS. POTTER: Thank you, Your Honor. I believe -- just so the record is clear, Your Honor, I believe Mr. Zuberi would like to speak to the Court directly. At this point what

1    I would say, Your Honor, is he -- as the Government

2    acknowledges, he tried to walk back that information.

3         The blocking his calls to the mother of his children

4    also cuts off contact with his children, which is obviously a

5    very significant issue for Mr. Zuberi.  We understand why the

6    Court would be concerned about these calls.  And, again, he

7    tried to walk it back.  So we're not aware of any video having

8    been made, and we're happy to answer any questions the Court

9    may have.

10        THE COURT:  I don't.  Does Mr. Zuberi wish to be

11   heard?

12        THE DEFENDANT:  Yes.  I -- when I was told there was

13   a protective order, I didn't know what a protective order means

14   inside of a jail.  What do you -- I mean, I don't know how

15   you're protecting anyone.  But -- and they didn't give me --

16   they didn't serve me something that said, "Oh, you can't do

17   this.  You can't do that."

18        They didn't give me the details of this protective

19   order.  I didn't know that you could not say the names of -- of

20   these witnesses.  But I said them, and then my attorney

21   contacted me and said I could not say the names.  So I didn't

22   say the names, so I just said to make a video and --

23        THE COURT:  Mr. Zuberi, you're going to have to slow

24   down.  We have a court reporter, and you're speaking very fast.

25        THE DEFENDANT:  Okay.  I didn't think that this would

be a problem.  I -- I -- I didn't know that this was a

violation of the protective order.  I thought they were

protected.  I'm inside of a jail.  And -- and that I -- when I

spoke to my mom today, I told -- she did a three-way call

without my permission.

I said, "I don't know if this could get you blocked,

too."  So I kind of was just trying to get off the phone, but I

can't control what everybody does on a phone call.  And she did

that, and I told Alycia to not make any video.  I didn't walk

it back.  I told her directly, "Do not make any video because

they're saying it is illegal.  So don't make the video.  Don't

make any videos."  That's what I said.  And you'll hear it when

you listen to it.  And I -- I cannot go without being able to

talk to my family.

THE COURT:  Okay.  Well, you are in violation of the

protective order.  You have released to a third party the

identifying information about victims in this case.  And it's

clear that you are encouraging somebody to harass, if not

tamper with, the witnesses in this case.  I'm concerned greatly

about that.

I'm concerned that, especially in these kinds of

cases, you know, it is, I think, difficult for the Government

to protect witnesses to the point where they feel like they can

participate in the prosecution.  Anything that manipulates that

really puts the Government at a great disadvantage if they

1    cannot protect the people that they wish to protect, protect

2    their names, their identifying information, their contact

3    information.

4            I don't know what you're thinking when you're having

5    these conversations.  I don't know if, in fact, when you say

6    you were backing it up, you really mean that.  It's pretty

7    clear that you and Ms. Westfall or --

8            THE DEFENDANT:  I can't really hear.  I can't hear.

9    Sorry.

10           THE COURT:  Yeah.  I'm sorry, too.  But we're in kind

11   of a difficult situation, Mr. Zuberi, where you on the phone

12   have been, quite frankly, frightening:  Frightening to your

13   attorneys, frightening to the alleged victims in this case.

14   And I simply cannot allow it to continue.  These are at-risk

15   people who do not need you putting out their information to

16   others, especially Ms. Westfall, who seems more than happy to

17   do your bidding when it comes to creating videos, getting

18   contact information about them and disseminating it to others.

19           So you are not to have any individual contact with

20   Ms. Westfall.  Your phone, e-mail and writing privileges to her

21   will be blocked by the Jackson County Jail.  If you need to

22   have conversations with Ms. Westfall about your children, about

23   the weather, about anything other than this case, it would be

24   with -- in the presence of the -- somebody on the defense team.

25           They could certainly be at her residence on a

speakerphone listening to the conversation, making sure it's

appropriate and not in violation of the Court's order.  If

there's mail that you wish to send her or she wishes to send

you, it needs to be reviewed by the defense team so that it

does not violate the protective order.

　　　　And that's true of e-mails as well.  So there is to

be no direct contact with Ms. Westfall unless a member of the

defense team is supervising that contact to make sure that this

is not a violation of the protective order or, quite frankly, a

violation of the law in terms of tampering with witnesses.

　　　　So, for better or for worse, you seem to get on the

phone and not understand that everybody is listening to what

you're saying.  And what you're saying is frightening.  And it

is the words of somebody who is sounding desperate, and

desperate to lash out at these victims -- alleged victims of

this crime.

　　　　So that has to stop, and this is the only way that I

can trust it will stop.  If I hear of any other phone calls to

any third party with information such as what I'm seeing in

these phone calls to Ms. Westfall, all phone access will be cut

off except to your attorneys.  So am I clear on that,

Mr. Zuberi?

　　　　THE DEFENDANT:  I understand.

　　　　THE COURT:  Okay.  Is there anything else we need to

discuss from the Government?

1    MR. SWEET:  No, Your Honor.

2    THE DEFENDANT:  Yes, I would -- no, I need to -- I

3  would like to set a hearing for my attorneys.

4    THE COURT:  Well, you need to talk to your attorneys

5  about setting a hearing.

6    THE DEFENDANT:  I told --

7    MS. POTTER:  Your Honor, I believe that we may need

8  to set a hearing regarding the status of counsel, is what

9  Mr. Zuberi is asking for.  And we're happy to reach out to

10  Ms. Pew.  There are some deadlines coming up, if we are no

11  longer going to be representing Mr. Zuberi, that may need to be

12  reset.  So I don't know what the Court's availability is.

13    THE COURT:  Well, I am in -- well, I'm not going to

14  drop everything again and -- and come down to Medford for yet

15  another hearing because Mr. Zuberi cannot seem to maintain a

16  relationship with counsel.  I am not planning on appointing new

17  counsel, given the preparedness and the amount of work

18  that's -- current counsel has been putting in, unless I hear

19  something dramatically different.

20    If, again, Mr. Zuberi is thinking he wants to

21  represent himself, I will send down the Faretta forms for him

22  to review.  But we can set the matter via video or when I'm

23  next in Medford, which would be in August.

24    MR. BERTHOLF:  We will discuss that with Mr. Zuberi

25  and let the Court know if the deal will work for Mr. Zuberi.

1          THE COURT:  Okay.  Anything from the Government on

2   that issue?

3          MR. SWEET:  No, Your Honor.  Thank you.

4          THE COURT:  All right.  Thank you, folks.  We'll be

5   in recess.

6                            *  *  *

7              (Court adjourned, 6-26-24 at 3:36 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  C E R T I F I C A T E

2  United States of America v. Negasi Zuberi

3  Case No. 1:23-cr-00254-MC

4  Telephonic Status Hearing

5  June 26, 2024

6  I certify, by signing below, that the foregoing is a

7  true and correct transcript, to the best of my ability, of

8  the telephonic proceedings heard via conference call, taken

9  by stenographic means.  Due to the telephonic connection,

10  parties appearing via speakerphone or cell phone or wearing

11  masks due to coronavirus, speakers overlapping when

12  speaking, speakers not identifying themselves before they

13  speak, fast speakers, the speaker's failure to enunciate,

14  and/or other technical difficulties that occur during

15  telephonic proceedings, this certification is limited by the

16  above-mentioned reasons and any technological difficulties

17  of such proceedings occurring over the speakerphone at the

18  United States District Court of Oregon in the above-entitled

19  cause.

20  A transcript without an original signature, conformed

21  signature, or digitally signed signature is not certified.

22

23  /s/Lindsey A. Weresch, RMR, CRR, CSR

24  Official Court Reporter          Signature Date: 7/5/2024

25  Oregon CSR No. 14-0427           CSR Expiration Date: 6/30/2026