NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**JEFFREY S. SWEET, OSB #994183**
Jeff.Sweet@usdoj.gov
**NATHAN J. LICHVARCIK**
Nathan.J.Lichvarcik@usdoj.gov
Assistant United States Attorneys
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 1:23-cr-00254-MC |
| v. | **GOVERNMENT'S CONSOLIDATED RESPONSE TO PRO SE MOTIONS** |
| **NEGASI ISHAIAH ZUBERI, aka JUSTIN JOSHUA HYCHE,** | |
| **Defendant.** | |

On December 11, 2024, Mr. Zuberi filed Motions to Declare a Mistrial and to Set Aside Verdict after the Court granted his motion to proceed pro se.[1] ECF Nos. 208, 209. The substance of those motions is largely duplicative, so the government is responding to both in this consolidated response. In short, none of Mr. Zuberi's arguments merit relief, but, regardless, the overwhelming weight of the evidence would render any of the complained-of errors harmless.

   A.   **SUMMARY OF THE ARGUMENTS**

Defendant's motions state a litany of complaints that fall into four categories: (1) due process violation; (2) ineffective assistance of counsel; (3) prosecutorial misconduct; and

---

[1] The government understands that defendant relayed that "Mr. Negasi Zuberi" is not the defendant's preferred naming convention. However, to ensure that is correct, until directly confirmed the government will continue to follow that convention in public filings.

**Government's Consolidated Response to Pro Se Motions**

(4) insufficient evidence. Mr. Zuberi styles his motions as requests for a mistrial and to set aside the verdict (presumably under Federal Rule of Criminal Procedure 29). But, given his pro se status, the government will also provide analysis under Federal Rule of Criminal Procedure 33 (motion for a new trial).

1. **Due Process**

Defendant alleges that the jury was aware that he was shackled during the trial. Due process "does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case." *Deck v. Missouri*, 544 U.S. 622, 632 (2005). It "undermines the presumption of innocence and the related fairness of the factfinding process." *Id.* at 630.

Despite the due process concerns, whether to shackle a defendant during trial remains within the trial court's discretion. *United States v. Cazares*, 788 F.3d 956, 963 (9th Cir. 2015). That discretion is restricted insofar as: "(1) the court must be persuaded by compelling circumstances that some measure was needed to maintain the security of the courtroom; and (2) the court must pursue less restrictive alternatives before imposing physical restraints." *Id.* (quote omitted).

In assessing whether a less restrictive alternative exists, the trial court must consider the disadvantages and limitations that come with shackling, including: "(1) reversal of the presumption of innocence, (2) impairment of the defendant's mental ability, (3) impeding of communication between the defendant and his counsel, (4) detraction from the decorum of the trial, and (5) pain." *Id.* at 955 (quotes omitted).

This Court addressed the shackling question multiple times before trial. Mr. Zuberi's conduct in pretrial detention informed that decision. Specifically, Mr. Zuberi made statements in

**Government's Consolidated Response to Pro Se Motions**

recorded jail calls indicating that he intended to disrupt the proceedings, and this followed his suicidal statements and cutting himself with a knife immediately prior to his arrest, his pretrial escape attempt, and his efforts at witness tampering. This Court was justified in taking the advice of the U.S. Marshals' Service favoring shackling, especially given the layout of the courtroom and the concerns around safety. All of these factors created a compelling need for restraints. *See Morgan v. Bunnell*, 24 F.3d 49, 50 (9th Cir. 1994) (per curiam) (acknowledging trial courts' wide discretion when dealing with a defendant who has a propensity for violence).

The Court chose to shackle only Mr. Zuberi's feet, leaving his hands free to write notes, including to counsel. It installed curtaining around the attorneys' tables to try to provide a barrier from the jury's view, it timed Mr. Zuberi's movements in the courtroom to be only during the jury's absence, and it took breaks for Mr. Zuberi's comfort when requested. Those were reasonable precautions, even if Mr. Zuberi is correct that the curtaining slipped at times.

To establish that shackling caused a due process violation, a defendant must satisfy four factors: (1) that he was restrained in the jury's presence, (2) the jury saw the restraints, (3) the physical restraints were not justified by the state's interests, and (4) he suffered prejudice. *Cazares*, 788 F.3d at 966 (citing *Cox v. Ayers*, 613 F.3d 883, 890 (9th Cir. 2010)).

Without polling the jurors, the government cannot know whether any of them saw Mr. Zuberi's restraints. But even assuming that they did, the restraints were well justified by the government's and the Court's safety concerns and the weight of evidence against Mr. Zuberi makes it unreasonable to conclude that the jury's decision was affected by this factor.

### 2. Ineffective Assistance of Counsel

Rule 33 permits a court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Although 28 U.S.C. § 2255 is the preferred vehicle

for an ineffective assistance of counsel claim, a Rule 33 motion can be used if the record is sufficiently complete. *United States v. Molina*, 934 F.2d 1440, 1446–49 (9th Cir. 1991); *but see United States v. Hanoum*, 33 F.3d 1128, 1130–31 (9th Cir. 1994) (disfavoring ineffective assistance as a subject of a Rule 33 motion under the "newly discovered evidence" prong).

Courts that address an ineffective assistance claim in a Rule 33 motion apply the *Strickland* standard. *Strickland v. Washington*, 466 U.S. 668 (1984); *see, e.g., United States v. Cortes*, 895 F.2d 1245, 1248 (9th Cir. 1990); *United States v. Logan*, 861 F.2d 859, 864 (5th Cir. 1988); *United States v. Villalpando*, 259 F.3d 934, 938 (8th Cir. 2001); *see also United States v. Arny*, 831 F.3d 725, 731 (6th Cir. 2016) (noting that no "court of appeals has adopted the 'ineffective assistance light' standard" advocated by the defendant for Rule 33 motions).

To establish counsel's ineffectiveness, a defendant must show (1) that "counsel's performance was deficient," and (2) that "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "Under Strickland, a criminal defendant's counsel may be deemed ineffective only if counsel's performance falls outside the wide range of reasonable professional assistance." *Torres-Chavez v. Holder*, 567 F.3d 1096, 1100–01 (9th Cir. 2009) (cite and quote omitted). The court reviews counsel's performance with deference and presumes that "the challenged action might be considered sound trial strategy." *United States v. Juliano*, 12 F.4th 937, 940 (9th Cir. 2021).

Mr. Zuberi widely criticizes his attorneys for, among other things—not rebuilding the cell for the jury, not adequately cross-examining or impeaching the victims, drawing attention to certain bad facts (e.g. the drill and the garage space), not showing favorable pictures of defendant and his son, not pushing the cell phone jammer expert more, not rebutting evidence of his gun

possession, not objecting enough, not demanding a bench trial—and, more globally, for changing the defense theory without properly consulting him.

None of this meets *Strickland*'s performance bar. *United States v. Layton*, 855 F.2d 1388, 1420 (9th Cir. 1988) ("we have repeatedly refused to second-guess counsel's strategic decision to present or to forego a particular theory of defense when such decision was reasonable under the circumstances"). Or *Strickland*'s prejudice requirement. *See United States v. Ferreira-Alameda*, 815 F.2d 1251, 1254 (9th Cir. 1986) (mere criticism of tactics or strategy is insufficient to establish prejudice).

Although defense counsel does have a duty "to consult with the defendant on important decisions and to keep the defendant informed of important developments," they also have "a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process," and *Strickland*'s standard is not meant to "restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688–89. Many of the strategy calls that Mr. Zuberi criticizes were either required by controlling law or appropriate given the facts.

For example, the criminal procedure rules put off-limits some of Mr. Zuberi's suggested attacks on the victims, including using prostitution acts or mental health history to attempt to discredit a victim's credibility. *See* Fed. R. Evid. 403, 412. Under Rule 23(a), the government must agree to a bench trial, Mr. Zuberi had no ability to obtain one unilaterally. Fed. R. Crim. P. 23(a); *see also Singer v. United States*, 380 U.S. 24, 25 (1965) (confirming that a defendant has no constitutional right to a bench trial). The Westfall's testimony about deconstructing the cell, along with officers' observations about its durability, make it apparent that rebuilding the structure for the jury's inspection would have been an unwise strategy.

**Government's Consolidated Response to Pro Se Motions**

With two testifying victims, a wealth of forensics, and Mr. Zuberi's stockpile of physical evidence proving his crimes, neither of *Strickland*'s prongs can be met.

### 3. Prosecutorial Misconduct

Mr. Zuberi alleges that the government coached its witnesses and colluded with defense counsel. There is nothing to support these accusations. To obtain a reversal based on prosecutorial misconduct, the defendant must establish both misconduct and prejudice. *United States v. Lloyd*, 807 F.3d 1128, 1167 (9th Cir. 2015). Mr. Zuberi can do neither.

### 4. Sufficiency of the Evidence

Finally, Mr. Zuberi argues that there was insufficient evidence to support the jury's verdict. Federal Rule of Criminal Procedure 29 permits a court to grant a motion for judgment of acquittal "of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In judging sufficiency, the Court looks at the evidence in the light most favorable to the jury's verdict to determine whether it would "allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010).

When looking at a new trial motion under Rule 33(a), the Court's view is both broader and narrower. It need not view the evidence in the light most favorable to the government. *See United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). It may weigh the evidence and evaluate the witnesses' credibility on its own. *Id.* But, Rule 33's remedy is saved for "exceptional cases in which the evidence preponderates heavily against the verdict" and the court determines that the interest of justice requires a new trial. *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981); *see also* Fed. R. Crim. P. 33(a).

Mr. Zuberi's case does not warrant remedy under either standard. The government's evidence of his guilt was overwhelming on all counts. AV1 and AV2 provided first-hand accounts of his brutality. Each detailed how he kidnapped, handcuffed, and sexually assaulted them. And their descriptions were highly corroborative. Each woman testified that Mr. Zuberi used a yellow and black taser against them, handcuffed them at the wrists and ankles, displayed a pistol, interfered with their cell phones, placed a backwards facing hoodie over them, took them to his garage where each saw cinderblocks in some form, sexually assaulted them, and told them that they were valuable or going to make him money.

The victims' testimony was corroborated in other respects by video surveillance footage, financial records, location data and DNA evidence, not to mention the cinderblock cell, the Honda Pilot, the guns, the taser, the cell phone jammers, the recovery of AV1's cellphone and other possessions, and more. Each of the gun or ammunition charges was equally well proven with physical evidence and testimony.

### B. CONCLUSION

For the reasons stated above, Mr. Zuberi's motions should be denied.

Dated: December 23, 2024

    Respectfully submitted,

    NATALIE K. WIGHT
    United States Attorney

    /s/ *Suzanne Miles*
    SUZANNE MILES
    Assistant United States Attorney