NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**JEFFREY S. SWEET, OSB #994183**
Jeff.Sweet@usdoj.gov
**NATHAN J. LICHVARCIK**
Nathan.j.Lichvarcik@usdoj.gov
Assistant United States Attorneys
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 1:23-cr-00254-MC |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **NEGASI ISHAIAH ZUBERI, aka JUSTIN JOSHUA HYCHE,** | |
| **Defendant.** | |

Negasi Zuberi should never be able to kidnap, beat or sexually assault another woman. He should be sentenced to life in prison.

Mr. Zuberi's crimes showed a disturbing and remarkable degree of planning and preparation—combined with violence and sexual assault. When he went to a bar on May 6, 2023, he had ready his taser, handcuffs, ammunition, and the pistol he stole. He tased AV2, beat her, handcuffed her, kidnapped her, and raped her. He then accelerated his plans, addressing a critical problem he faced with AV2—"I don't know where I'm going to keep you"—and built what he intended to be an escape-and sound-proof cell.

On July 14, 2023, he drove to a red-light district in Seattle, Washington and kidnapped AV1. Here too he was well-prepared; he had his taser, stolen pistol, multiple handcuffs, and newly acquired leg irons. Mr. Zuberi drove through the night to Klamath Falls, stopping only for gas, bathroom breaks, and a terrifying sexual assault on AV1 in the Oregon woods. He then locked her into the cell he painstakingly built. While the full scope of his deranged plan is unknown, what is clear is that AV1's consent was not part of it.

Mr. Zuberi's plan depended on his victims staying captive or quiet. Neither complied. AV1 punched her way out of his cell and AV2 came forward despite his death threats against her and her loved ones. And his attempt to flee ended in a Reno parking lot where he used his young child to protect himself. Then he tried to escape from the Jackson County Jail—twice—failing both times.

This is not Mr. Zuberi's first time beating and sexually assaulting a female—he was convicted in 2020 of beating a minor girl who he solicited for commercial sex and then raped. He also had a Targets list in his room with women's names on it, and he stalked other women and girls in Klamath Falls and elsewhere. And even today, despite all of the evidence of his crimes, he shows no remorse but instead emphatically blames everyone but the one person truly responsible: himself.

Negasi Zuberi's plan failed. Operation Take Over failed. His cell failed. AV1, AV2 and the women on his Targets list are safe and he remains in custody. But even his failures came with a terrible cost to his victims. He should never be allowed to wreak havoc again, never have the chance to plan, prepare, stalk, target, kidnap, beat, and rape. Only a life sentence ensures this—nothing else will protect women from Negasi Zuberi's depraved predations.

The government respectfully requests that the Court sentence Negasi Zuberi as follows, with all sentences imposed consecutively:

**Government's Sentencing Memorandum**                                                          **Page 2**

| | | |
|---|---|---|
| Count 1 | Kidnapping | Life in prison |
| Count 2 | Transportation | 10 years in prison |
| Count 3 | Kidnapping | Life in prison |
| Count 4 | Unlawful Poss. Firearm and ammunition | 15 years in prison |
| Count 5 | Unlawful Poss. Firearm and ammunition | 15 years in prison |
| Count 6 | Unlawful Poss. Ammunition | 15 years in prison |
| Count 7 | Unlawful Poss. Ammunition | Dismiss[1] |

A.    **FACTUAL BACKGROUND**

This Court is well aware of the details of Mr. Zuberi's crimes, which are also detailed in the Presentence Investigation Report and are not repeated here. But there are matters that merit emphasis.

Mr. Zuberi is no stranger to the legal system and was explicitly warned that his criminal conduct placed him in jeopardy. His first sex offense conviction was for having sex with a 16-year-old minor when he was 23 years old; he was convicted in 2017 of sexual intercourse with a minor and placed on three years' probation. In 2018, he was convicted of disorderly conduct for a verbal dispute with his significant other, who was pregnant, and who reported that Mr. Zuberi had struck her in the face the day before. In 2020, he was convicted of assault with a deadly weapon after he brutally beat and raped MV1, a 16-year-old girl who was working as a commercial sex worker. During the rape, when he was angry and forceful, the victim was afraid of being killed and submitted, and she said, "I just laid back and I literally just cried." But she fought back when he began to hurt her, so he punched her in the face repeatedly before dragging her out of his car and leaving her. A picture of her swollen and bloodied face is provided in

---

[1] To avoid a multiplicity issue with overlapping conduct between Counts 6 and 7, the government is recommending the dismissal of Count 7.

**Government's Sentencing Memorandum**                                    **Page 3**

Exhibit 1, as well as photographs of injuries to both AV1 and AV2, which is submitted under seal.

At his assault sentencing, the judge described it as a disturbing case, and said the following:

> I hope we don't have to wait until something really, really bad happens, Mr. Hyche. I've been around this business long enough to feel confident to say that there's a little something going on that's not necessarily on the up-and-up and you might need to wake up before you find yourself in a heap of trouble. Not to say this isn't trouble now, but you can find yourself in some more serious trouble.
>
> So I'm not going to say anything more. I just hope we don't find ourselves in a situation where you are looking at a much more serious situation.
>
> THE DEFENDANT: No sir, you won't. You will not.
>
> THE COURT: Time will tell.

Given the scope of Mr. Zuberi's conduct, a timeline is included below which provides context for the planning and preparation of his crimes against AV1 and AV2.

| **TIMELINE** |  |
|---|---|
| 1-26-23 | Black and yellow taser purchased |
| 2-1-23 | What material used for prison/jail floor message |
| 2-18-23 | "Quinn" work schedule screenshot—her name is on Targets list |
| 4-12-23 | Message asking about building a block structure and if hands could destroy it |
| 4-14-23 | 76 concrete blocks purchased at Klamath Falls Home Depot |
| 4-27-23 | Handcuffs purchased—three pairs |
| 4-27/28-23 | Traveled to Aurora Ave., Seattle and then to WA work location of "Quinn" |
| 5-6-23 | Kidnapping of AV2 in Klamath Falls |
| 5-7-23 | I got the Springfield XDM (pistol) message to friend |
| 5-15-23 | Purchased leg irons on Amazon |
| 7-1-23 | "June" screenshot taken—her name is on Targets list |
| 7-?-23 | Targets list with illegible day in July 2023—creation date unknown |
| 7-7-23 | Mr. Zuberi was near Aurora Ave. in Seattle at night—receipt from adult club |
| 7-14-23 | Kidnapping of AV1 on Aurora Ave. in Seattle |
| 7-15-23 | AV1 taken to Klamath Falls and escapes |
| 7-16-23 | KFPD search warrant on 1336 N Eldorado residence and Mr. Zuberi arrested in Reno, Nevada |

Mr. Zuberi's misogyny was on full display in a February 2023 message he wrote to the mother of his children:



He then proclaimed that this is his ideology and that he will stand by it and will die for it, and in doing so will die truly free.

And the seeds of Mr. Zuberi's plan were found in a notebook in his bedroom:




In April 2023 his plans became clearer as seen in his messages to a friend:





He put his words into action, purchasing cinderblocks just two days after the message. He followed up by purchasing more supplies for the cell over the following months, including as shown in this image from Home Depot on May 17, 2023.

Handcuffs, leg irons, deadbolts, a taser, cell phone jammers, a metal security door, sound insulation—these are the tools and supplies he purchased or acquired in furtherance of his crimes. And he caused terrible harm; we know from the victims' injuries and their testimony the physical and mental harm he inflicted and the devastating impact it had on them.



Beyond the charged conduct, Mr. Zuberi also stalked women and girls. He sat in high school parking lots and recorded girls walking towards a car, calling out license plate numbers of certain cars.

Mr. Zuberi's iCloud account had multiple images of license plates taken at a Vancouver, Washington fitness center. He also took images of license plates in the Vancouver Mall parking lot. At one point, he recorded video of a car in the mall parking lot, and ten minutes later he took video of the same car outside a house. As he drove by the house, he can be heard repeating the

address number, and minutes later took a screenshot of the address typed into a mapping application.

Mr. Zuberi also talked to a minor who worked at a Klamath Falls restaurant, and took video of her car in the restaurant parking lot and of her vehicle at her residence. This information is further detailed in Exhibit 2, which is the government's addendum to the response to defendant's motion to sever, and which is submitted under seal.[2]

Negasi Zuberi is a predator—a dangerous, motivated, and persistent predator—and his conduct makes clear AV1 and AV2 were not his only potential victims.

B.    GUN AND AMMUNITION CHARGES

The government moves to dismiss Count 7 because the conduct overlaps enough with Count 6 to raise multiplicity concerns. The other unlawful possession of firearm and ammunition charges involve contraband that Mr. Zuberi stored at different locations, justifying the separate counts. The government also recommends consecutive sentences for Counts 4 through 6, and the basis for this recommendation, along with an overview of the relevant counts, follows.

Count 4 charges the possession of the Springfield XDM pistol and its 19 rounds of ammunition. Mr. Zuberi had the pistol with him in Seattle, and on July 14 and 15, 2023, he drove it back to his Klamath Falls residence at 1336 N. Eldorado, leaving it in his Honda Pilot in his garage. Hours later, AV1 escaped and took the pistol and ammunition from the Pilot.

Count 5 charges the possession of firearms and ammunition at Mr. Zuberi's travel trailer which was stored at AAA Discount Storage in Klamath Falls, which is located approximately five miles from Mr. Zuberi's residence. The firearms were a Remington .308 rifle, an Anderson

---

[2] Page 9 of the addendum lists concrete blocks as having been purchased on May 17, 2023. While that is correct, at that point in the timeline the date should be April 14, 2023.

**Government's Sentencing Memorandum**                                              **Page 8**

Manufacturing AM-15 rifle and a Stoeger 12 gauge shotgun, along with approximately 114 rounds/shells of ammunition.

Count 6 charges the possession of approximately 430 rounds/shells of ammunition which were in in the master bedroom at 1336 N. Eldorado, most of which were found under his bed.

Count 7 charges the possession of approximately 363 rounds of ammunition which were found in the garage at 1336 N. Eldorado.

Mr. Zuberi stored and/or possessed the firearms and ammunitions in Counts 4 through 6 at different locations. He possessed the pistol and ammunition in Count 4 in his vehicle, which he drove from Seattle, Washington to his house in Klamath Falls, Oregon. The firearms and ammunition in Count 5 were at his trailer, which was miles away from his residence at a storage unit. And the ammunition found in Counts 6 and 7, (with the government moving to dismiss Count 7), was separately found in his bedroom and garage at 1336 N. Eldorado.

The location of the firearms and ammunition is shown in the chart below:

| **Honda Pilot** **COUNT 4** | **Prowler Trailer** **COUNT 5** | **Residence-Bedroom** **COUNT 6** | **Residence-Garage** **COUNT 7-Dismiss** |
|---|---|---|---|
| **Firearm** <br>• Springfield XDM 9mm pistol <br><br>**Ammunition** <br>• SIG <br>• NovX <br>• Hornady <br>• Blazer | **Firearm** <br>• Remington .308 rifle <br>• Anderson AM-15 rifle <br>• Stoeger 12 gauge shotgun <br><br>**Ammunition** <br>• Lake City Arsenal <br>• Remington <br>• Hornady <br>• NovX <br>• SIG <br>• Federal <br>• Winchester | **Ammunition** <br>• Lake City Arsenal <br>• Hornady <br>• Tula Cartridge <br>• Federal <br>• Winchester | **Ammunition** <br>• Tula Cartridge <br>• Remington <br>• Blazer <br>• Hornady |

**Government's Sentencing Memorandum**                                                                 **Page 9**

Mr. Zuberi possessed the firearms and ammunition in Counts 4 through 6 in different places, thus his possession of them was not simultaneous or undifferentiated, which was at issue in *United Staes v. Ankeny*, 502 F.3d 829, 838-39 (9th Cir. 2007). Accordingly, Counts 4 through 6 stand apart and the sentences can, and should be, served consecutively to each other and to all other counts.

### C.    GUIDELINES

On October 18, 2024, a jury found Mr. Zuberi guilty of Counts 1 through 7 of the superseding indictment. The government concurs with the guidelines calculations set forth in the PSR in paragraphs 56 through 91, including grouping Counts 1 and 2 into one group (kidnapping and transportation of AV1), Counts 3 and 4 into another group (kidnapping of AV2 and the possession of the pistol and ammunition), and Counts 5 and 6 (possession of remaining firearms and ammunition) into another.[3] The group with the highest guidelines range is the group of Counts 3 and 4, as follows:

| Guidelines | | Amount |
|---|---|---|
| Base offense level: | § 2A4.1 | 32 |
| Serious bodily injury: | § 2A4.1(b)(2)(B) | +2 |
| Dangerous weapon: | § 2A4.1(b)(3) | +2 |
| Sexual exploitation: | § 2A4.1(b)(5) | +6 |
| Obstruction of justice: | § 3C1.1 | +2 |
| Reckless endangerment: | § 3C1.2 | +2 |
| **Adjusted Offense Level** | | **46** |

The group of Counts 1 and 2 have the same calculations as above, except there is no enhancement for serious bodily injury, resulting in an adjusted offense level of 44. Counts 5 and 6 have an adjusted offense level of 22.

---

[3] This assumes that the Court dismisses Count 7.

**Government's Sentencing Memorandum**                                                                              Page 10

Applying the multiple count adjustment, there is a two-level increase to the group of Counts 3 and 4, resulting in an adjusted offense level of 48, which is reduced to the highest total offense level on the guidelines, 43. Mr. Zuberi has a criminal history category of III, resulting in an advisory guideline range of life.

With the exception of Mr. Zuberi's escape attempts, the Court has already heard testimony and seen evidence regarding the contested guidelines. The escape attempts form part of the basis for the USSG § 3C1.1 enhancement for obstructing or impeding the administration of justice; his threats to silence AV2 stand as an independent basis. Section 3C1.1 provides a two-level enhancement for obstructing, or attempting to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the offense, provided that the conduct is related to the offense or a closely related offense. Application Note 4(E) provides that attempting to escape from custody before trial or sentencing is an example of conduct to which the enhancement applies.

Mr. Zuberi twice tried to escape from the Jackson County jail, once before his trial on August 22, 2023, and again after the trial on November 8, 2024. Additional details follow.

On August 22, 2023, after a jail employee heard a tapping sound from outside the jail, deputies went to Mr. Zuberi's cell—of which he was the sole occupant—and found him standing on the top bunk by the window. Glass shards were on the top bunk and books were covering the window. A deputy moved the books and saw that some of the glass on the window had been chipped and damaged. In his cell deputies found a sandal with a large screw pushed through it, which was seemingly being used to chip at the window. The screw had been removed from the cell's desk. Deputies interviewed an inmate, who said Mr. Zuberi talked about breaking the window and had asked another inmate if they had any loose pieces in their window.

Photographs of the damaged window and the jail sandal with the screw are attached as Exhibit 3. Exhibit 4 is a Jackson County Sheriff's Office report of the investigation. Because it includes information from another inmate regarding Mr. Zuberi's conduct, it is being filed under seal.

On November 8, 2024, less than a month after being found guilty at trial, Mr. Zuberi again tried to escape from the Jackson County Jail. Medical staff saw a large hole in an interior window of a pod, and the inmates were locked down. An inmate said that Mr. Zuberi and another inmate were involved in breaking the window, and that Mr. Zuberi threw a mop bucket wheel against it. Once the window cracked, he then kicked it with his heel to shatter it. Mr. Zuberi and the other inmate then both used a broom handle to make the hole larger. A second inmate said that Mr. Zuberi and the same accomplice were trying to escape, and the two often discussed it and asked others in the pod about the jail routine, layout, and number of guards.

The inmates in the pod were checked, and only Mr. Zuberi was found to have an injury. He had a very small cut on his finger, which was bleeding, and he appeared to have blood on his boxers. The mop wheel also had a red substance on it. Mr. Zuberi had no explanation as to how the cut occurred, and he stumbled over his words and was shaking when the deputy inspected his hands. Two Jackson County Sheriff's Office reports are submitted as Exhibit 5, and are submitted under seal as they include information from other inmates. Photographs of the broken window, the wheel with a red substance, Mr. Zuberi's boxers with red marks, and his finger with a small bleeding cut, are submitted as Exhibit 6.

**D.    ARGUMENT**

Few people do what Negasi Zuberi did: make a "Targets list", write out a plan for a take over, build a cell, buy handcuffs, a taser and cellphone jammers, and then stalk girls and women

in the community. Even fewer kidnap, imprison and rape a woman—and then do it again to a second victim two months later. But this is exactly what Mr. Zuberi did.

Seemingly motivated by a perverse desire for power, money, and sexual domination, he has no apparent limitations on the harm he will cause or the pain he will inflict. He is untethered by laws or morals, and brooks no interference with his plans. Deterrence is ineffective, and he tried to escape both before and after his trial, desperate to avoid punishment. His crimes are not an aberration or a momentary lapse but rather the opposite—they are the product of methodical planning and preparation and a remarkable expenditure of time and money. Though his rage and resort to violence may be sudden, it takes place in the context of a broader premeditated and deliberate scheme.

Post-conviction, Mr. Zuberi continues to maintain his innocence and blame everyone but himself for his situation. But the evidence of his guilt was overwhelming. Each of his victims independently described his yellow and black taser, having a hood placed over her face, and being handcuffed at her wrists *and* ankles. AV1's phone was in his car in Reno, her purse was in his garage in Klamath Falls and her blood was in his cell. He hastily dumped his taser, handcuffs, used condom and cell phone jammers in his trailer before fleeing. And his speculation that AV2's injuries could have been caused by someone else ignores both her testimony and the pictures of her uninjured face taken shortly before he kidnapped her. Location data corroborates AV2's description of him driving her out into the countryside—twice. After imprisoning AV2 in a garage in a filthy car, tasing, beating, and threatening her, his characterization of his rape of AV2 as consensual sex is grotesque.

Negasi Zuberi will always seek another victim to assault, to imprison, to rape, to stalk, to attempt to traffic; his conduct has made that clear. Neither AV1, AV2 or any other woman or girl

should ever have to worry that Mr. Zuberi will target them. One thing alone will protect women and society from Negasi Zuberi, and that is removing him from society for the rest of his life.

### E.   CONCLUSION

For the reasons stated above, the government recommends life sentences on Counts 1 and 3, kidnapping, 10 years' imprisonment on Count 2, transportation, and 15 years' imprisonment each on Counts 4, 5 and 6, all to be served consecutively to each other, and to be followed by a lifetime of supervised release on Count 2, five years on Counts 1 and 3, and 3 years on Counts 4, 5 and 6, along with restitution and the fee assessments.

The government will ask for additional time to provide the amount of restitution being requested. Regarding forfeiture, Mr. Zuberi waived his right to jury trial for forfeiture, and before sentencing the government will update the Court if there is an agreement regarding forfeiture or if the Court will need to determine what items should be forfeited.

Dated: January 8, 2025

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

s/ *Jeffrey S. Sweet*
JEFFREY S. SWEET
NATHAN J. LICHVARCIK
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 8, 2025, I caused to be electronically filed the government's sentencing memorandum with the Clerk of the Court for the United States District Court, District of Oregon by using the CM/ECF system.

I further certify the participant in the case is not a registered CM/ECF user. I will cause a copy of the sentencing memorandum, except for the exhibits the government has moved to submit under seal and discussed further below, to be placed in the outgoing mail in the U.S. Attorney's Office pursuant to office procedure for mailing by First-Class Mail, postage prepaid, within three calendar days of the electronic filing, to the following non-CM/ECF participant:

Negasi Zuberi, 70127-510
Jackson County Jail
787 West 8th Street
Medford, OR  97501
Defendant, pro se

With a copy also being mailed to defense investigator:

Monty Holloway
P.O. Box 4392
Medford, OR  97501
Investigator

The sentencing memorandum exhibits the government has moved to submit under seal include victim information and information from inmates regarding Mr. Zuberi. Accordingly, the sealed exhibits are not being mailed to Mr. Zuberi, but are being provided to the defense investigator to review with him. To expedite matters, a copy of the sentencing memo and the exhibits, including those the government has moved to seal, will also be emailed to defense investigator Monty Holloway.

s/ *Jeffrey S. Sweet*
JEFFREY S. SWEET
Assistant United States Attorney
