1          IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF OREGON

3                   MEDFORD DIVISION

4

5

   UNITED STATES OF AMERICA,          )
6                                      )
                         Plaintiff,    )  No.
7                                      )  1:23-cr-00254-MC-1
             v.                        )
8                                      )  January 17, 2025
   NEGASI ZUBERI, also known as        )
9  Justin Joshua Hyche, also known     )  Medford, Oregon
   as Sakima Zuberi,                   )
10                                     )
                         Defendant.    )
11

12

13

14

15            **TRANSCRIPT OF PROCEEDINGS**

16                   (Sentencing)

17

18     BEFORE THE HONORABLE MICHAEL J. MCSHANE

19    UNITED STATES DISTRICT COURT CHIEF JUDGE

20

21

22

23
   **COURT REPORTER:**
24 Kellie M. Humiston, RMR, CRR
   (503) 326-8186
25 Kellie_Humiston@ord.uscourts.gov

1                    **A P P E A R A N C E S**

2

3    FOR THE PLAINTIFF:
                         U.S. ATTORNEY'S OFFICE
4                        By:  Jeffrey S. Sweet
                         405 E. Eight Avenue
5                        Suite 2400
                         Eugene, OR 97401
6

7    FOR THE PLAINTIFF:
                         U.S. ATTORNEY'S OFFICE
8                        By:  Nathan J. Lichvarcik
                         405 E. Eighth Avenue
9                        Suite 2400
                         Eugene, OR 97401
10

11   FOR THE PLAINTIFF:
                         U.S. ATTORNEY'S OFFICE
12                       By:  Suzanne A. Miles
                         1000 SW Third Avenue
13                       Suite 600
                         Portland, OR 97204
14

15   FOR THE DEFENDANT:  Negasi Zuberi, appearing pro se

16   U.S. PROBATION:  Summer I. Robinson

17

18

19

20

21

22

23

24

25

1          (January 17, 2025, 1:12 p.m.)

2                    **P R O C E E D I N G S**

3

4          THE COURTROOM DEPUTY:  The case on the calendar is

5     United States of America vs. Negasi Zuberi, Case Number

6     1:23-cr-00254-MC.

7          THE COURT:  All right.  If I could have folks introduce

8     themselves for the record.  Do we have somebody from Probation?

9     Yes.  If you could introduce yourself, please.

10         U.S. PROBATION:  Yes.  Thank you, Your Honor.  Summer

11    Robinson on behalf of Probation.

12         THE COURT:  Thank you, Ms. Robinson.  For the

13    Government.

14         MR. SWEET:  Thank you, Your Honor.  Good afternoon.

15    AUSAs Jeff Sweet, Nate Lichvarcik, and Suzanne Miles.  And also

16    seated at counsel table is Legal Assistant Kayla Bouchard.

17         And, Your Honor, Adult Victim 2 is here today, and at

18    the appropriate time would like to address the Court.

19         THE COURT:  All right.  Thank you.  Mr. Zuberi is here,

20    representing himself.

21         Mr. Zuberi, are you having anyone speak on your behalf

22    today?

23         MR. ZUBERI:  No, I'm not.

24         THE COURT:  Okay.  First order of business, my

25    understanding is the Government has moved to dismiss Count 7.  Is

1    that correct, Mr. Sweet?

2              MR. SWEET:  That's correct, Your Honor.

3              THE COURT:  All right.  Count 7 will be dismissed.  And

4    then we have a number of motions that have been filed in the

5    case, I think 19 separate motions filed by Mr. Zuberi that I

6    think we need to address before we get into sentencing issues.

7    I'm not asking the parties to restate what they have already put

8    in their motions or their responses, but, Mr. Zuberi, is there

9    anything else you want me to know with regard to the motions that

10   you filed?  I have read them all.

11             MR. ZUBERI:  No.

12             THE COURT:  Anything further from the Government?

13             MR. SWEET:  Thank you, Your Honor.  I think the only

14   thing may be just to confirm that we've received all of them,

15   because I know some were coming in the mail late.  The last one

16   the Government shows receiving is ECF Number 241.  That was

17   titled a Motion to Acquit Count One-Seven (Jurisdiction,

18   Dismissal, Unconstitutional Verdict).  I don't know if any have

19   been subsequently mailed or brought by Mr. Zuberi.  If not, Your

20   Honor, we believe they're meritless and untimely and would ask

21   they be denied.  Thank you.

22             THE COURT:  All right.  The most recent filing I have

23   is ECF 241, and that is the motion to acquit on Counts 1 through

24   7.  That had to do with the venue in Eugene, in the Eugene

25   division.

1    Mr. Zuberi, have you filed anything after that?  I did

2    allow you to file late motions, but --

3    MR. ZUBERI:  Well, I filed a motion to acquit for

4    Count 5, which the Government never responded to.  It was filed

5    on December 11th.

6    THE COURT:  Okay.  I will go through all the motions I

7    have, and if I miss that one, we'll address it.

8    MR. ZUBERI:  Okay.

9    THE COURT:  And there's a lot here, so (pause) -- All

10   right.  As a matter of fact, it is the first one, I think, ECF

11   207, motion to acquit as to Count 5.  That motion is denied.

12   That particular charge in Count 5 alleges possession of guns and

13   ammunition in the trailer.  The evidence at trial did -- was

14   sufficient to prove beyond a reasonable doubt that Mr. Zuberi had

15   both an ownership interest in the trailer and was present in the

16   trailer on July 15th of 2023.

17   Motion Number 2 is ECF Number 208, and that's a motion

18   to declare a mistrial on all counts.  I'll go through the

19   individual portions of that, but the motion is denied.

20   Regarding the shackling of Mr. Zuberi during the trial,

21   Mr. Zuberi states in his motion that the jurors could see that he

22   was shackled and that they could hear the shackles when he moved.

23   I do not believe this to be the case at all.  At no

24   time did either a juror or the defense raise the issue with the

25   Court during the trial.  Mr. Zuberi was never transported in

1 front of the jury, and at all times he was at counsel table with
2 his legs and feet covered by a cloth skirt surrounding the outer
3 perimeter of the table.  His hands were not shackled.  The
4 shackles were sprayed prior to trial with a rubberized coating
5 that rendered them silent.  The court, and certainly myself and
6 court staff, were on alert to listen to and look for signs that
7 the jury could see or hear the shackles, and at no time during
8 the trial was I concerned that that was the case.  At one point
9 at the start of the trial, it did appear that Mr. Zuberi was
10 trying to pull down the cloth skirt with his feet, thereby
11 purposely exposing the shackles to the jury.  I believe the
12 marshals addressed that issue by taping down the skirting to the
13 floor.

14 So here, the Court relies on the *United States vs.*
15 *Cazares* and the tests set forth in that case, 788 F.3d 956, 2015,
16 a Ninth Circuit case.  The factors the Court are to consider with
17 regard to shackling is whether the defendant was physically
18 restrained in the presence of the jury, whether the shackling was
19 seen by the jury, that the physical restraint was justified or
20 not, and that the defendant suffered prejudice as a result of the
21 shackling.  I made a finding at the time that the physical
22 restraint was justified because of the threats that Mr. Zuberi
23 made towards his attorney and because of his escape attempts at
24 the jail.

25 I do not believe the shackling was seen by the jury.

1    Mr. Zuberi was not restrained in their presence.  I mean, he was

2    restrained in that his feet were shackled, but it wasn't done in

3    their presence.  And even if there was some unconstitutional

4    issue, the shackling does not prejudice the defendant, because

5    the evidence of guilt was overwhelming.

6            In ECF 208, Mr. Zuberi also raises the issue that the

7    negative media coverage may have biased the jury.  The jury in

8    this case was questioned at length during voir dire about media

9    coverage, and the Court cautioned them at recess each day.  Each

10   morning the jurors were asked if they were exposed to any media

11   coverage.  There's no evidence that the jurors were biased by

12   anything other than the evidence at trial.

13           Mr. Zuberi also raises in this motion, as he does in

14   many motions, ineffective assistance of counsel.  Mr. Zuberi was

15   appointed two experienced defense attorneys who were provided all

16   of the funding necessary to represent him.  The fact that he was

17   found guilty after the overwhelming evidence of his crimes was

18   presented to the jury does not make his representation

19   constitutionally ineffective.

20           The fact that Mr. Zuberi would have had his attorneys

21   characterize some of the evidence differently does not make the

22   representation constitutionally ineffective.  For instance, he

23   argues that his attorneys did not characterize the cinderblock

24   structure that he built in his garage with no electrical outlets,

25   no doorknobs, no musical recording devices as a musical studio.

1   This characterization was one note too high for his attorneys to

2   sing.  Nobody believes, Mr. Zuberi, that that cell was a music

3   studio except you.

4           To prevail on an argument of ineffective assistance of

5   counsel, Mr. Zuberi must show that there is a reasonable

6   probability that but for counsel's unprofessional errors, the

7   result of the proceeding would have been different.  A reasonable

8   probability is a probability sufficient to undermine confidence

9   in the outcome.  I am confident in the outcome of this case

10  despite Mr. Zuberi's discontent with his attorneys'

11  representation.  He certainly may raise these issues in a motion

12  for post-conviction relief.

13          Regarding prosecutorial misconduct, which is also

14  raised in ECF 208, to succeed on a claim of prosecutorial

15  misconduct, Mr. Zuberi must establish both misconduct and

16  prejudice.  And here I'm citing from *United States vs. Lloyd*, 807

17  F.3d 1128, a 2015 Ninth Circuit case.  Mr. Zuberi has done

18  neither.

19          Mr. Zuberi has stated at various times that his -- in

20  his motions that the prosecution was politically motivated, that

21  the Government has conspired to convict him, that the Government

22  has instructed witnesses to lie, but there's nothing in the court

23  to analyze here other than Mr. Zuberi's assertion.  There is no

24  evidence of misconduct to review in determining whether it could

25  have materially affected the fairness of the trial, which is the

1    standard of review under *United States vs. Cabrera*.

2            ECF motion number 209, this is a motion to set aside

3    the verdicts in Counts 1 through 7.  It's denied.  This motion

4    repeats the allegations of ineffective assistance of counsel,

5    prosecutorial misconduct, and corruption that was outlined in the

6    previous motion, ECF 208.  It's denied for the same reasons.

7            ECF 211, motion for continuance of sentencing, this is

8    denied.  Mr. Zuberi has asked for more time to prove ineffective

9    assistance of counsel or prosecutorial misconduct.  This is not

10   the basis for continuing sentencing.  Mr. Zuberi on appeal and on

11   post-conviction relief may pursue these claims.

12           ECF two thousand -- or 212 and 221, these are motions

13   for discovery with regards to Count 1 through 7.  These motions

14   are denied.  Well, in essence, Mr. Zuberi's requesting all of the

15   discovery that was made available to him and his attorneys during

16   the litigation.  He's asking for this to bolster his arguments

17   regarding prosecutorial misconduct and inadequate representation.

18   Again, he may pursue these requests as part of his

19   post-conviction remedies, but they are not relevant to

20   sentencing.

21           ECF 219, Motion to Release Property, I believe the

22   Government has agreed to release some non-evidentiary property to

23   third parties.  Any requests for forfeiture, I believe they are

24   to be determined by the Court.

25           Is that something we're going to resolve today or at a

1    later time?

2             MR. SWEET:  We would need to address that today, Your

3    Honor, yes.

4             THE COURT:  Okay.  We'll address that at a later time,

5    then, today.

6             All evidentiary property seized is to be held pending

7    appeal.

8             ECF 220, Motion to Suppress DNA Evidence, the motion is

9    denied as untimely.

10            ECF 222, Motion to Set Aside Verdict Counts One-Seven,

11   this is denied.  Again, this motion focuses on prosecutorial

12   misconduct.  Primarily Mr. Zuberi claims that because Adult

13   Victim 2's statements changed over time or may have been

14   inconsistent, that the Court should conclude that the Government

15   directed Adult Victim 2 to lie under oath.

16            The inconsistencies, however, were not hidden from the

17   jury.  The jury was presented by the Government with AV -- Adult

18   Victim 2's statements and they were able to consider them in

19   light of all of the evidence.  It's certainly not unusual for

20   witnesses to be inconsistent.  There are many reasons why Adult

21   Victim 2's statements may have changed over time.  She was, after

22   all, brutally kidnapped and raped.  She suffered a concussion.

23   She was embarrassed.  Mr. Zuberi threatened her and her family.

24   He took pictures of her license, he made a video of her having

25   sexual contact with him.  There is simply no evidence that the

1    Government presented perjured testimony.

2              ECF 223, motion regarding trial transcripts, the Court

3    has agreed to provide the trial transcripts to Mr. Zuberi, and I

4    believe they have been provided.

5              Motion Number 10, motion for declaration of (pause) --

6    I don't know if I have -- this, I think, is ECF 224, Motion For a

7    Declaration of Dismissal.  That motion is based on the same

8    allegations of prosecutorial misconduct, and I -- the electronic

9    filing 222 is denied for the same reasons.

10             ECF 225, Motion to Declare Mistrial Counts One-Seven,

11   that's denied.  Here again, Mr. Zuberi raises the shackling

12   issues in ECF 208.  He also raises the issue that he was

13   persuaded not to testify at trial by his attorneys, stating that

14   this was bad advice.  I do realize Mr. Zuberi later regretted

15   accepting this advice after he heard the Government's closing

16   argument to the jury, but he did accept the advice, and the Court

17   was very careful in giving Mr. Zuberi the time he needed to

18   ponder the advice, and we held a colloquy in a sealed record with

19   Mr. -- with Mr. Zuberi about his right to testify and the fact

20   that only he could make that decision.

21             ECF 226, Motion For All Communications, this is denied.

22   While Mr. Zuberi believes that the communication between the

23   attorneys and the Government, the witnesses and the Government,

24   and the victims and the Government will expose corruption within

25   this case, his belief alone is not reason for the Court to begin

1    an inquiry into corruption.

2              ECF 227, motion for all court filings, this is denied.

3    Mr. Zuberi had access to these filings during the course of the

4    litigation.  He believes that within these filings is evidence of

5    corruption.  So it's denied for the same reasons as previously

6    stated.

7              ECF 229 is a motion for continuance of motion deadline.

8    I did grant that motion.

9              ECF 237, motion to acquit on the grounds that

10   reasonable doubt exists and the allegations are nonsensical,

11   that's denied without comment.

12             ECF 238, Motion to Enforce the Law, is denied.  Here,

13   Mr. Zuberi raises his dissatisfaction with the conditions of his

14   confinement.  This -- these issues can be raised in civil actions

15   under the Fourteenth or Eighth Amendment, but they're not

16   something the Court is in a position to address at sentencing.

17             ECF 239, motion to vacate the verdict, is denied.

18   Again, this is a repetition of allegations of corruption and poor

19   representation.

20             ECF 240, motion to dismiss for lack of jurisdiction,

21   denied.  18 U.S.C. 3237(a) provides for venue in any district in

22   which such offense was begun, continued, or completed.

23             And then finally, ECF 241, this is a motion to acquit.

24   It's denied.  Here, Mr. Zuberi argues that the proper venue for

25   trial was the Eugene Division rather than the Medford Division of

1     the United States Courts for the District of Oregon.  First, the

2     issue does not really center on where the sexual assault

3     occurred, which it occurred in probably several divisions, but

4     where the transportation occurred, and that certainly can be tied

5     to a transportation to Klamath Falls within the Medford Division.

6            Second, you know, quite frankly, the Court discussed

7     early on in this case the possibility of having the trial in the

8     Eugene Division, but because of the location of so many of the

9     witnesses, neither side took up the Court on that offer, and we

10    agreed that the case would be tried in the Medford Division.

11           So those are the motions that have been filed by

12    Mr. Zuberi.  Mr. Zuberi, am I missing any of the motions that you

13    have filed that I have not addressed?

14           MR. ZUBERI:  No, but I -- I haven't received the

15    opening statements and closing from the prosecutors for the trial

16    transcripts.

17           THE COURT:  Okay.  We'll try to get those to you.

18           MR. ZUBERI:  All right.

19           THE COURT:  I -- okay.  Anything else we need to

20    discuss as a preliminary matter before we discuss sentencing

21    issues?

22           MR. SWEET:  Nothing regarding the motions, Your Honor.

23    And I believe the Court mentioned forfeiture at the appropriate

24    time.

25           THE COURT:  Okay.  Maybe we'll -- well, maybe we should

1   manage the forfeiture issue now.  Would you like to address that,

2   Mr. Sweet?

3            MR. SWEET:  Yes, Your Honor.  Thank you.  Your Honor,

4   yesterday the Government filed a motion for entry of a

5   preliminary order of forfeiture as well as a proposed preliminary

6   and final order of forfeiture.  We did e-mail copies to the

7   defense investigator.  I'm not sure if Mr. Zuberi received those

8   yet.  If he did not, I do have copies of each.  And if I could

9   hand those to the marshals to provide to Mr. Zuberi.

10           THE COURT:  Mr. Zuberi, did you have a chance to review

11  the preliminary order of forfeiture?

12           MR. ZUBERI:  No.

13           THE COURT:  All right.  I want you to take a look at

14  that now.  It looks like it deals primarily with the -- well,

15  I'll let you look at it.  It's a number of items, much of it

16  having to do with ammunition and firearms.

17           MR. SWEET:  And, Your Honor, if I may point

18  Mr. Zuberi's attention, there -- there were discussions between

19  the parties when Mr. Zuberi was represented and then some

20  subsequently as well through the defense investigator.  And on

21  page 3, if Mr. Zuberi were to look at page 3 of the preliminary

22  order of forfeiture, not -- not the one titled Motion, it does

23  strike the Apple laptop, which would not be forfeited, as the

24  parties discussed.  It would be maintained as evidence, and

25  ultimately at the conclusion of all the appeals, it would be then

1    wiped and returned to the appropriate party.

2              And also in 22, the black mesh bag and the black hat

3    were struck.  Based on my understanding, that is consistent with

4    what the parties have discussed.

5              I am unaware if Mr. Zuberi has any objections to the

6    forfeiture of any of the other items.

7              MR. ZUBERI:  I do.  And I don't know which phone this

8    is, the gray iPhone with cracks on the back.  Is that my iPhone

9    or (pause) --

10             MR. SWEET:  That would be Mr. Zuberi's iPhone, Your

11   Honor.  That would be -- yes.  Item 31, that would be

12   Mr. Zuberi's iPhone.

13             MR. ZUBERI:  Okay.  So I don't want that to be

14   forfeited, and I would like the data from that phone sent to

15   some -- one of my relatives if possible.

16             THE COURT:  Does the phone have evidentiary value?

17             MR. SWEET:  It does, Your Honor.  And the Government --

18   if we need to have a hearing on the forfeiture just of that

19   phone, we can.  I will say that the Government has only had

20   limited success in accessing that phone.  We have not -- we did

21   not have the password and we have so far -- well, we've been

22   unable to crack it.  So there is some limited data.

23             If the contacts list from that phone has already been

24   obtained, certainly we have no objection to printing a copy of

25   that out and sending that -- sending that to either Mr. Zuberi

1    wherever he is or to the defense investigator to get to him.  I

2    can't say for sure if that's one of the things that we have on

3    the phone.

4             THE COURT:  Mr. Zuberi, I'm not willing to return the

5    phone at this time.  I mean, you certainly have used phones to

6    produce a lot of evidence in this case.

7             MR. ZUBERI:  Okay.  So I just want the data from the

8    phone, my pictures of my sons, pictures of me, videos, everything

9    that I have put on that phone for many years.  I would like that.

10   And I still disagree.  I don't want it to be forfeited.  So they

11   can keep it for evidence, but after that, it should be returned.

12            THE COURT:  All right.  I'm going to overrule the

13   objection.  I will sign the preliminary order of forfeiture.

14   Certainly the parties can work if possible on maybe returning

15   some of the data from the phone involving personal photos, but,

16   you know, there is a -- there are consequences when you're

17   involved in this kind of crime and using your phones.  The

18   Government hopefully will make some effort at down the road

19   returning maybe some of the personal data.  I don't know if

20   that's possible or not.

21            MR. SWEET:  Your Honor, I do know there are concerns

22   with commingling data, especially when -- I know this has come up

23   in the past in other cases, Your Honor.  The agencies usually do

24   have concerns about pulling some things off.  There may be some

25   things that could either be screen shot.  And, frankly, Your

1    Honor, some of that data may be backed up in other locations that

2    we could perhaps --

3              THE COURT:  Sure.

4              MR. SWEET:  -- point Mr. Zuberi to.

5              THE COURT:  Are you not using the cloud, Mr. Zuberi?

6              MR. ZUBERI:  I wish I wasn't using the cloud, but

7    unfortunately I was, and -- yeah.

8              THE COURT:  Okay.  That's a very interesting statement,

9    Mr. Zuberi.

10             MR. ZUBERI:  Uh-huh.

11             THE COURT:  Okay.  I have signed the preliminary order

12   of forfeiture.  Any other preliminary matters before we discuss

13   sentencing?

14             MR. ZUBERI:  Well, I just need all the exhibits that

15   were shown at trial and the police statements, grand jury

16   transcripts, and I need the jury instructions and the indictment,

17   because the indictment was taken from me by jail staff, so

18   (pause) --

19             THE COURT:  Mr. Zuberi, I'm going to appoint appellate

20   counsel for you, and they'll be able to get those kinds of

21   documents that may assist them in preparing your appeal.

22             MR. ZUBERI:  Well, yeah.  I'm not -- I want to

23   represent myself on appeal.

24             THE COURT:  We'll take up that with the Court of

25   Appeals.  Under -- my understanding of the law is you do not have

1    a right to represent yourself on appeal.  You can request of the

2    Ninth Circuit to represent yourself, but that's something you're

3    going to have to take up with them.

4         MR. ZUBERI:  Okay.

5         THE COURT:  I mean, you've already kind of experienced

6    how difficult it is to get your requests through and -- on your

7    own.  And on appeal, that's even -- there's deadlines, there are

8    certain things that have to be filed, there are certain things

9    that, you know, the courts are not going to turn over to you

10   personally.  So you are going to need an attorney on appeal and

11   for any post-conviction issues such as post-conviction relief for

12   ineffective assistance of counsel.

13        You can appeal to the Ninth Circuit or petition them to

14   represent yourself, but that's an issue that the judges of the

15   Ninth Circuit would have to resolve.

16        MR. ZUBERI:  Okay.

17        THE COURT:  All right.  With regard to sentencing,

18   let's -- I'd like to hear from the Government first.

19        MR. SWEET:  Thank you, Your Honor.  And, Your Honor,

20   there were multiple objections that Mr. Zuberi made to the

21   pre-sentence report.

22        THE COURT:  Yes.  And, you know, they are very similar

23   to the motions that have been filed.  I am denying -- or

24   overruling the objections to the pre-sentence report and -- I'm

25   overruling the objections.

1          MR. SWEET:   Thank you, Your Honor.   Then, Your Honor,

2    at this time, the Government would ask if AV-2 would come forward

3    and address the Court.

4          THE COURT:   Yes.

5          MR. SWEET:   Your Honor, she would prefer to stand while

6    addressing the Court, and so --

7          THE COURT:   Okay.

8          MR. SWEET:   -- that -- if she may.

9          THE COURT:   And the court reporter will simply reflect

10   this is Adult Victim 2 testifying.

11         All right.   I have heard your testimony, obviously,

12   during the trial, but what would you like to tell me now with

13   regard to sentencing?

14         ADULT VICTIM 2:   So this is just a statement that I

15   wrote to deliver for you today, so I'll just start with that, if

16   that's okay.

17         THE COURT:   Okay.

18         ADULT VICTIM 2:   I don't have anything prior to it.

19         I must admit this took me a long time to write.   I

20   didn't know how to start or where to stop.   My friends and family

21   told me that they would support my decision whether to come

22   deliver this statement at all.   I decided it felt unfair to

23   everyone that he's hurt and victimized not to be here today.

24         Mr. Zuberi took away my ability to feel remotely safe

25   around people I'm unfamiliar with.   People who should be

1    potential friends or interactions that should be quick and polite

2    are now terrifying.  I'm constantly reminding myself to never be

3    near anyone I don't already know, for the chance that they could

4    decide to take me, too.

5            The reasons I was given as to why I was taken were

6    things I can't change:  how happy people were to see me, and my

7    appearance.  I've stopped wearing makeup most days and doing my

8    hair.  I don't wear nice clothes anymore, for the fear that they

9    might cause attention.  I stopped going outside even to get the

10   mail on my porch.  I didn't have to worry about going to work,

11   because I lost my job due to this incident as well.

12           I received injuries from him that resulted in me

13   struggling to eat, recognize where I was at times, and stand for

14   certain periods of time at all, along with many other issues I've

15   decided not to get into today.

16           My family told me when I saw them that the light in my

17   eyes was noticeably gone.  It broke my heart to hear that,

18   because as a child, I struggled a lot with self-worth and love.

19   I worked really hard to -- as I grew into an adult to mold myself

20   into a good person that I could look in the mirror and love.

21           After what this man did to me, I couldn't look in the

22   mirror or let alone say I loved or recognized myself.  And as

23   much as it hurts to say, I sometimes still can't.

24           I want to say that in my day-to-day life, he doesn't

25   affect me because he's in custody and he shouldn't have the

1    ability to, but when I think of him, the smell of his car, or the

2    things that he did to me, I don't feel clean and I don't feel

3    human.  I have to relive this experience over and over again to

4    convince people that this happened to me, retelling my nightmare

5    to make people understand that Mr. Zuberi is not deserving of

6    being in public and is a threat to everyone, especially women

7    everywhere.

8              In the short time I was trying to make the police

9    believe me and look for him, another woman was forced to escape.

10             He doesn't view women as in control of our bodies or

11   our choices.  He is merciless.  He used my hair like a leash,

12   yanking me around the back of his car, hitting me so hard, I

13   didn't know if any them would be my last.

14             I made it about a week before I ended up cutting off my

15   hair.  It didn't feel like it belonged to me anymore.

16             He told me I should have known that I belonged to a

17   black man, with my last name being AV-2.  The last name AV-2 is a

18   name I received from my father, who passed away when I was 13.

19   And as much as I wanted to yell at him and explain to him how

20   wrong he was, I had no ability to do so, as my (indiscernible) --

21   sorry -- and hanging in the balance of his decisions for

22   13 hours.

23             He made me feel as though I was dying, to the point I

24   was saying goodbye to my loved ones in my head.

25             I'm standing in front of you today lucky and grateful

1  to be alive, hoping that you see that this is not a man who

2  deserves to be around others.  He's shown blatant disregard and

3  lack of care for human life, and I'm hoping your decision lets me

4  and others live our lives never having to walk the same streets

5  as him ever again.

6          Thank you for your time.

7          THE COURT:  All right.  Thank you.  I appreciate you

8  being here.

9          ADULT VICTIM 2:  Thank you.

10          THE COURT:  I appreciate your courage.

11          All right.  Mr. Sweet.

12          MR. SWEET:  Thank you, Your Honor.  Your Honor, Negasi

13  Zuberi is a serial predator who committed acts of evil.  He

14  hunted women.  This was planned sexual violence, and he has shown

15  no remorse.

16          Your Honor, any sexual violence is an abomination, but

17  he went to an extraordinary amount of effort, an extraordinary

18  amount of planning and preparation to put himself in a position

19  of inflicting sexual violence on women, to put himself in a

20  position to kidnap, to control, to rape, and to imprison, and

21  that is exactly what he did.

22          He has shown no remorse, no regret, no empathy, and he

23  showed no hesitation to commit his crimes.

24          What makes him so dangerous is that he combined

25  methodical preparation with violence and weapons and a relentless

1    focus on sexually dominating, sexually assaulting, and sexually

2    exploiting women.  The sexual assaults were not incidental to his

3    crimes.  This is not like a bank robbery or carjacking where the

4    violence is incidental to the goal of obtaining something.  The

5    sexual assault and the sexual domination of women went to the

6    core of what he was doing, to the core of his entire plan.  He

7    has repeatedly shown his desire to rape.  Over a little more than

8    a three-year period, he raped two women and one teenage girl.  He

9    beat two of those victims, Your Honor, and he imprisoned the

10   third in a cell.

11        If we look at the Seattle kidnapping, Your Honor, that

12   shows a chilling and remarkable degree of planning and

13   preparation.  He had a cellphone jammer that he acquired and that

14   he used.  He had a planned kidnapping of a woman in Seattle that

15   he had in cuffs all the way down to Klamath Falls, a remote

16   location from where he kidnapped her, and he had built, purpose

17   built a cell to imprison her.

18        Any one of those factors taken individually would be

19   highly unusual.  It is exceptionally aggravating that we have the

20   combination of those, Your Honor.

21        Then the Klamath Falls kidnapping, then we see more of

22   the rage side of Mr. Zuberi.  There we see violence, the use of

23   weapons.  He tased, he used a taser on AV-2.  He beat her.  He

24   fired a pistol in a car out the window when she was in the car.

25   He made death threats against her, Your Honor.

1          Your Honor, these are the twisted actions of a serial

2     predator.  He told AV-1, "You're going to die.  I'm going to die.

3     We're all going to die."  He told AV-2 that he wanted an army of

4     servants and soldiers, and that he would get the women pregnant.

5     Your Honor, these are unhinged statements.

6          It is not an overstatement to say that what he put

7     these women through, what they experienced at his hands was a

8     real life horror movie.

9          Your Honor, I want to step back for a minute and talk

10    about the victim of the 2020 case, Minor Victim 1 in California.

11    Your Honor, he raped her.  She submitted for safety, for her own

12    safety, as she'd been taught to do, but when he began to

13    physically hurt her, she fought back.  That enraged Mr. Zuberi,

14    and so he beat her badly.  I want to make sure that the Court has

15    seen --

16         THE COURT:  I have.

17         MR. SWEET:  Your Honor, that photo is unforgettable.

18    Mr. Zuberi's reaction to it in his -- he submitted a response

19    yesterday.  Your Honor, that was -- his response was so callous

20    to that picture.  He said her face shouldn't have been leaking

21    with blood.  He said that so cavalierly; no empathy.  He said her

22    face wouldn't have been leaking with blood at that time.

23         Your Honor, he was wrong about the time.  The timestamp

24    on the photo was 1:19 a.m.  He said he was with her from 12:00 to

25    1:00-ish.

1            Your Honor, again, what he did to her was horrible.  We

2       spoke with her today, Your Honor, and asked her if there's

3       anything -- what she hoped to see, and she asked to relay her

4       answer was and what she would hope to see is him, Mr. Zuberi,

5       "never walking the streets again.  It's not safe for our

6       society."  That's what she said, Your Honor.

7            Your Honor, he was convicted, Mr. Zuberi was convicted

8       of assault with a deadly weapon and placed on supervision.  He

9       could have made Minor Victim 1 his last victim.  He could have --

10      as horrible as his crime was, he could have stopped, he could

11      have made an effort to turn things around and step back.  He

12      didn't.  He did the opposite.  He was on supervision when he

13      committed the instant offenses.  He was still wanted.  He wasn't

14      on active supervision, but he was wanted for that case.

15           Your Honor, I want to talk for just a minute about

16      "Operation Take Over".  It sounds fantastical even to say the

17      words "operation takeover," but that's what he titled it.  And

18      it's not fantastical when you look in his garage, when you look

19      in his trailer, when you look in his bedroom, when you look in

20      his Pilot, when you look in his digital devices, and, yes, his

21      iCloud.  It sounds surreal, but he made it into reality, Your

22      Honor.

23           Your Honor, I don't want to go over everything, but

24      there is so much evidence in this case, there are a few things

25      that I'd like to highlight.  And I'd like to pull up Government's

1    Sentencing Exhibit 2, page 9.  And that's a timeline, Your Honor,

2    because "Operation Take Over" -- "Operation Take Over" itself is

3    not dated, but we do know as far back as January 2023, Mr. Zuberi

4    sent a message to his friend asking basically how can he build an

5    underground house out of concrete blocks.  And we know where he

6    was talking about building it, because he sent the GPS

7    coordinates.  It was his Bonanza property.

8           Then January, still January of 2023, he buys a taser.

9    February, he messaged his friend, "What material are a prison or

10   jail floors made from?"

11          And then, Your Honor, what the jury didn't hear, they

12   didn't hear that his iCloud had photos from the fitness center in

13   Vancouver, Washington, where he's taking license plates from the

14   mall, where he's taking video of cars and then seemingly

15   following them home and taking video of the same car that he took

16   video of at the mall outside their house, that he's taking screen

17   shots of -- of the address of that house.

18          Your Honor, they didn't hear that he -- that he

19   seemingly put a tracker on a car that he'd seen at the mall and

20   that he set up a geo fence around that person's house, and then

21   he took a screen shot of his Land Air Sea tracking application,

22   and the title on that was "Operation One", Your Honor.  And, of

23   course, the person who used that car was a high school female.

24          Your Honor, the stalking began long ago for Mr. Zuberi.

25   I'd like to turn for just a moment and pull up Government's Trial

1    Exhibit 510.  Your Honor, this is -- this is something that the

2    Court has seen before, but moving into April, April 12th, he

3    messaged his friend about the block structure, "How do you build

4    a block structure that can't be destroyed with hands?"  Two days

5    later, he bought 76 cinderblocks.  A few weeks later, he bought

6    three pairs of handcuffs, Judge.

7         Then April 27th, he's up on Aurora Avenue where he

8    later kidnapped AV-1.  Right after that, he went to the work

9    location, Your Honor, of a woman whose name was on the targets

10   list.  He was there for hours in the middle of the night on, and

11   he spent $70 at the bikini barista where that woman worked.

12        May 2nd, Your Honor, something else the jury didn't

13   hear, there was a woman, a minor female, who worked at a

14   restaurant in Klamath Falls that Mr. Zuberi interacted with.  He

15   took video of her car in the parking lot.  And then driving by

16   that night, took video of her house, drove by again, and then

17   took video of her car at her house.

18        Your Honor, he is hunting women and girls.  It is

19   sinister.  And that is the context in which we must look at the

20   kidnapping of AV-2.  His exact targeting of her may have been

21   opportunistic, but it is existing in the broader context of his

22   scheme and of his plan to hunt women and to sexually exploit

23   them.

24        Your Honor, in terms of AV-2, he kidnapped her, he

25   tased her, he beat her, he handcuffed her at her ankles and her

1    wrists, he fired a pistol out the window.  He had her put a hood

2    over her face backwards so she couldn't see.  He took her to his

3    garage.  He sexually assaulted her through the night.  He told

4    her he was going to make a lot of money from her and he didn't

5    know where he was going to put her.  And then he threatened

6    violence against her and against her family, and he made that

7    video.  This is planned sexual violence, planned exploitation of

8    women.

9          And then he continued and he accelerated, because at

10   that point, the cell wasn't built, Your Honor.  He had

11   cinderblocks stacked in his garage, one of the many things that

12   AV-2 really had remarkable recall of detail and remarkable

13   observations was the stack of cinderblocks or the pile of

14   cinderblocks in his garage.

15         Your Honor, he put a ton of time and effort into

16   building a cell to imprison a woman, but that's not all he did.

17   May 11th, again, video at the restaurant in Klamath Falls where

18   the minor worked.  May 15th, he bought leg irons, Judge.  If Your

19   Honor remembers, AV-2, she struggled to move in the very

20   restrictive handcuffs he used.  He refined, he, quote unquote,

21   improved his plan, and he bought leg irons with a longer chain.

22         And then May 17th, May 19th, late June, Your Honor,

23   he's in a high school parking lot, he's in a high school parking

24   lot taking video of girls walking to cars, he's calling out

25   license plate numbers.

1        July 1st he took a screen shot of another woman whose

2   name was on his targets list, he took a screen shot of her social

3   media profile.

4        And he's going to Home Depot throughout, Your Honor.

5   And all of this culminates in the kidnapping of AV-1.

6        MR. ZUBERI:  Objection.  He's being repetitious.

7        THE COURT:  Overruled.

8        MR. SWEET:  Your Honor, this culminates in the

9   kidnapping of AV-1.  A week before, Mr. Zuberi was up in Seattle

10  near Aurora Ave.  And then on July 14th, he got her into his car

11  under false pretenses.  He used his cellphone jammer.  He said he

12  was a police officer.  He pointed a taser at her.  He put her in

13  handcuffs.  He used the new leg irons that he'd purchased.  He

14  showed her his pistol.  He drove her all the way down to Oregon.

15       She had to go to the bathroom in a parking lot with him

16  standing over her.  And then in the backwoods of Oregon, he

17  sexually assaulted her while she's in handcuffs and leg irons.

18       And then in Klamath Falls, he had her put a hood on her

19  face backwards, took her to the purpose-built cell, and he

20  imprisoned her in it.

21       Fortunately, Your Honor, he didn't beat her, because

22  she didn't fight back.  She escaped.  That's how she fought back.

23  It is frightening to think what Negasi Zuberi would have done if

24  he had come in the garage when she was midway through her escape.

25       Your Honor, I want to turn to his bedroom.  I want to

1 turn to his bedroom, which is ground zero for his plan to

2 exercise power and control over women:  police patches; handcuff

3 keys; keys to the deadbolt on the cell; a targets list, which is

4 titled, "Targets"; "Operation Take Over", titled "Operation Take

5 Over"; his drawing of an underground cell.  And we can't just

6 discount his writings, Your Honor.

7          The underground cell, Mr. -- Mr. Zuberi in one of his

8 motions said something like, "It doesn't make any sense.  What is

9 that?"  We know what that is, because he wrote his friend in a

10 message about it and sent the GPS coordinates.  He wanted to

11 build that in Bonanza, Oregon, at his rental property.

12          Your Honor, Mr. Zuberi's plans are more diabolical than

13 reality, but even the actions that he was able to do, his partial

14 achievement of his goals, that caused terrible harm.  And

15 thankfully, he was stopped before he was able to refine and

16 improve.  Thankfully, a woman never had to find out just what

17 purpose he intended for an underground structure in the backwoods

18 in Bonanza.

19          Your Honor, we know that Negasi Zuberi, we know he was

20 not done, we know he was not finished.  He didn't build a cell,

21 drive all the way to Seattle, kidnap AV-1, drive her all the way

22 back and imprison her in it just to drive back to Seattle and

23 drop her off.  Negasi Zuberi's plan was not done.

24          And I know, Your Honor, there are a lot of cases that

25 the words I'm using and the words I'm about to use would be

1    hyperbole.  Not in this case, Your Honor.  They're applicable

2    here, because the violence he inflicted on women and his detailed

3    plans to do so, his conduct was monstrous, it was depraved, it

4    was demented, it was cruel.  He put the victims through a

5    nightmare.

6                Your Honor, I want to step back for just a moment and I

7    want to turn to the sentencing guidelines, because there are two

8    in particular that are at issue, and that's the reckless

9    endangerment.  Your Honor, I don't want to spend long on the

10   reckless endangerment.  There is a reason the hostage negotiator

11   referred to Mr. Zuberi using his son as a human shield.  He's in

12   the car with his son.  He kept his son --

13               MR. ZUBERI:  Objection.

14               MR. SWEET:  -- during the standoff.

15               THE COURT:  For?

16               MR. ZUBERI:  I didn't -- I didn't do this.  This was

17   nod stated at trial.

18               THE COURT:  Mr. Zuberi, we all heard -- we watched the

19   video of what you and your son were doing.  It was -- everybody

20   who watched that could see that you were using your son --

21               MR. ZUBERI:  I never used my son as a shield.  That's a

22   lie.

23               THE COURT:  Maybe you don't want to believe that.

24               MR. ZUBERI:  That is a lie.  That is a lie.

25               THE COURT:  I'm not accepting --

1        MR. ZUBERI:  All of these things are lies that have

2  been said in this courtroom.

3        THE COURT:  You can tell me all about that in a moment.

4        Go ahead.

5        MR. SWEET:  Your Honor, I'll skip over the rest of the

6  reckless endangerment during flight, because I think the Court

7  has seen enough on that.

8        In terms of the obstruction of justice, Your Honor, two

9  bases for it:  the threats he made to AV-2 to silence her as well

10  as the video that he made, in addition to his escape attempts.

11  Your Honor, his escape attempts, like so many other things in

12  this case, they failed, but he tried and he did manage to make a

13  pretty big hole in a window in the Jackson County Jail.  That

14  supports an obstruction of justice enhancement.

15        Your Honor, even without both of those enhancements,

16  his guidelines -- his total offense level would still be a 44,

17  which is above the highest.  And the 43, Your Honor, carries an

18  advisory guideline range of life.

19        Now, Your Honor, the U.S. Attorney's Office --

20        THE COURT:  Walk me through that piece.  I mean, I -- I

21  have it as a 46 with the enhancements, but the maximum total

22  offense level would be a 44?  Am I understanding that correctly,

23  or the -- obviously the pre-sentence report has it at 43.

24        MR. SWEET:  Your Honor, it does reduce to a 43.  And if

25  we were at a 50, it would reduce to a 43.  No matter what --

1    anything above 43 goes down to that, but, Your Honor -- and,

2    actually, if I can turn the Court to paragraph 88 of the PSR,

3    which is page 19, it would have -- it had the combined adjusted

4    offense level as 48, and that's -- so Your Honor is correct in

5    terms of the 46 would be for the highest base offense level --

6    excuse me, for the highest grouping, but then when you combine

7    the kidnapping of AV-1 and the kidnapping of AV-2, you get the

8    plus 2, which takes you to the 48.

9           THE COURT:  I see.

10          MR. SWEET:  And his number, Your Honor, is literally

11    off the charts.  If the Court applied the obstruction and the

12    reckless endangerment, it would be a 48.  If the Court applied

13    neither, it would be a 44.  And then any of those numbers, Your

14    Honor, would get reduced to 43.

15          THE COURT:  I see.  Okay.  Thank you.

16          MR. SWEET:  And, Your Honor, the 43 carries an advisory

17    guideline range of life.  To go below life would be to vary

18    downward.

19          Your Honor, even if the guidelines in this case were

20    lower, the U.S. Attorney's Office would be recommending an upward

21    departure or an upward variance to achieve a sentence of life,

22    but it's not lower, Your Honor.  The advisory guideline range is

23    life.

24          We do not stand in front of this Court and lightly ask

25    for a sentence of life.  We fully recognize the gravity of that,

1    Your Honor.  We do so only in the rarest of cases, but Negasi

2    Zuberi, he stands apart, Your Honor.  He is a serial predator.

3              This is not a case of road rage.  This is not an

4    isolated or brief incident.  This is not a crime committed in the

5    heat of the moment.

6              His intended victims, his intended targets were women

7    and girls, and he stands unrepentant before this Court.  He

8    blames everyone.  He blames the victims, he blames the witnesses,

9    he blames the Government, he blames his attorneys, he blames

10   everyone but the one person who is truly to blame, Your Honor.

11             Your Honor, the plan he set in motion was chilling,

12   violent, and cruel.  And his ability to cause further harm was

13   stopped because of kind and alert concerned citizens, who really

14   played a powerful role in many parts of this case, because of law

15   enforcement, Your Honor, but most of all because of two brave

16   women, two women who went through so much and have so many

17   reasons to be proud of their strength, of their perseverance, and

18   that they have overcome adversity.

19             They testified, Your Honor, and the jury heard them and

20   Negasi Zuberi heard them, and whatever illusion of control that

21   he had, whatever temporary power he had over them, they

22   dispelled, Your Honor.  They broke free from Negasi Zuberi, but

23   we all know that given the opportunity, he would hunt women

24   again, Your Honor.

25             And so respectfully, never again, never again should

1    Negasi Zuberi be allowed to target, to stalk, to hunt, to beat,

2    to kidnap, to handcuff, to tase, to imprison, to rape another

3    woman.  Never again should he be allowed to walk free in society.

4            And both to protect the public and to punish him for

5    his terrible crimes, because that is what they are, for the harm

6    he caused and the nightmare he inflicted, Negasi Zuberi should be

7    sentenced to life imprisonment on Counts 1 and 3, to the

8    statutory maximum on all the remaining counts, and all should be

9    served consecutively.  Thank you, Your Honor.

10           THE COURT:  Thank you.

11           Mr. Sweet, if you could just answer one question

12   regarding the firearm and ammunition charges.  You are asking for

13   consecutive sentences.  Is it enough that they were found in

14   separate locations?

15           MR. SWEET:  The Government believes so, Your Honor.

16   They were possessed -- the pistol was possessed all the way up to

17   Seattle and back and in the car.  The other firearms were in the

18   trailer as well as the ammunition for that several miles away

19   from the house, and then you have -- and then you have the

20   ammunition that was found in the garage and the bedroom.

21           So really all three items were during the course of his

22   possession in completely separate locations, either miles apart

23   or -- for the pistol, you know, all the way in the District of

24   Oregon.

25           So, Your Honor, will there be a challenge to

1    consecutive sentences on those?  Undoubtedly, but, yes, we -- we
2    believe that is warranted, Your Honor.
3            THE COURT:  Okay.  Thank you.
4            All right.  Mr. Zuberi, what would you like to tell me?
5            MR. ZUBERI:  First of all, I do not know why Jeffrey
6    Sweet is treating this hearing like another -- like another
7    trial.  I am not charged with the things he has alleged in his
8    attempt to influence the Court to give me life.  I do not know
9    why he is trying to have me punished for things that I have
10   already been punished for.
11           I do not beat women.  That photo that he showed is not
12   of my doing.  Her pimp must have did that.  I have never in my
13   life beat a man or a woman like that.  I do not go around beating
14   people.  That photo was not the photo that was shown in the
15   Superior Court in California.  That is not the photo I should --
16   that is not the photo.  I should not have to defend myself from
17   allegations that have already been handled in a court of law.
18   The photo doesn't matter, because I would never harm a woman like
19   that.  I have three sisters who I grew up with.  If anyone beat
20   them the way this photo depicts, I would be in custody for
21   something else.  I love women.  I have no desire to hurt them.
22   This is false evidence.  Jeffrey Sweet is abusing his power.
23           Another thing is, I don't think a judge anywhere in
24   this country would approve a three-year probation deal for
25   something so horrible.  Her face looks like somebody beat her

1   with an object. I do not know how you got this photo in your

2   possession, but it is not the photo that was shown to me while in

3   California's custody. The judge would have never approved a

4   get-out-of-jail-free deal if the photo was the photo that was

5   shown before the hearing. This is false evidence. Also, I'm not

6   sure what time I was around that -- that person, so I don't have

7   the facts.

8        Also, the American criminal justice system is a system

9   of flaws. It is known for wrongful convictions, corruption,

10  entrapment, political targeting, withholding evidence, destroying

11  evidence, wrongful death, conspiracies, bribery, and all sorts of

12  injustice.

13        I am now living proof of a intentional unconstitutional

14  verdict. If this is a lawful verdict, then prove it. You can

15  not, because it is not. I can prove that a U.S. Attorney of

16  Oregon prosecuted me in violation of the United States

17  Constitution. Now, I am sure the U.S. Attorneys are thinking,

18  "Who cares? We think you are a rapist, so you are a rapist. We

19  do not care to give you a fair trial. As a matter of fact, we

20  can violate all your rights as long as we can get a conviction."

21        Well, I'm sorry to burst your bubble, but you cannot.

22        The U.S. Attorneys of Oregon instructed witnesses to

23  lie. They committed perjury. They colluded with my former

24  counsel to railroad me to prison. They did this by assuming

25  everything the witnesses said was fact in front of the jury.

1   They were extremely repetitive, and they testified for the false

2   victims.  All of this created prejudice against me.  My own

3   attorneys engaged in this corruption.

4          I do not have to lie.  This is a fact.  If you do not

5   believe me, then do your own investigation, or better yet, open

6   an investigation into this prosecution.  The proof is in the

7   trial transcripts and -- and the prosecutors' line of

8   questioning.  With my -- it is also in the false victims'

9   statements.  You can take the transcripts and compare the

10  prosecutors' line of questioning with my former attorneys' line

11  of questioning.  You will immediately notice the similarities.

12  Looking at my attorneys' questions would make -- would make you

13  ask yourself, is he being prosecuted by his own attorneys, or why

14  is his attorneys making him look guilty even though I am not

15  guilty?  That is what has happened in this case.

16         While the FBI and the U.S. Attorneys boast of their

17  98 percent conviction rate, this rate is based on systematic

18  corruption.  They do not follow -- they do not allow fair trials.

19  That's why no one beats the feds.

20         I do not deserve life in prison, because I am innocent.

21  I do not deserve life in prison, because I -- because these

22  people have lied.  I do not deserve life in prison, because

23  Congress did not mean for a person found guilty without causing

24  death to lose their life.  They broke the law to get a guilty

25  verdict.  Let's not forget the FBI allowed evidence to be

1    destroyed.

2         False victim 1 and false victim 2 have unbelievable and

3    nonsensical stories.  They changed their stories multiple times.

4    They are not truthful.  The prosecutors' theories make no sense

5    and are contradicted.  The same applies to the false victims.

6    However, they want to give me life in prison based on an

7    illogical case.

8         My former attorney, Amy Potter, whispered in my ear,

9    "It is politically correct that you are found guilty.  Prison

10   will be fine."  Did you just hear me?  I will repeat it.  My

11   former attorney, Amy Potter, whispered in my ear, "It is

12   politically correct that you are found guilty.  Prison will be

13   fine."  Then she stood up and signaled to the U.S. marshals to

14   take me away.  I guess this means I am a political prisoner of

15   the political left.  This also means that -- this also means she

16   wanted me to be found guilty.  Now, imagine your own attorney

17   working to make sure you are found guilty based on her political

18   party's agenda.  This means you never had a chance at a fair

19   trial.

20        Amy Potter is also a former prosecutor who worked side

21   by side with the prosecutors who are prosecuting me on this case.

22   Look into this.  This is a fact.

23        The prosecutors are angry because I will not accept

24   their unconstitutional guilty verdict.  I will never accept it.

25   It is nothing but lies.

1          Michael Bertholf and Amy Potter -- Michael Bertholf, my
2   other attorney, who worked tirelessly to make sure the jury
3   accepted the false victims' testimony as fact, was key to making
4   sure that overwhelming reasonable doubt was not shown to the
5   jury.  Let me be clear.  This case has overwhelming reasonable
6   doubt.  It was not shown to the jury, thanks to Michael Bertholf
7   and Amy Potter.

8          This is not only criticism; it is the events of the
9   trial.  I endured weeks of your degradations.  I endured hours
10  and hours of your attacks on my character.  They said that I beat
11  women.  They made me look like a bad person.

12         The U.S. Attorney of Oregon is wielding power of a
13  king.  They are not supposed to be the judge, jury, and
14  executioner.  They should not be able to guarantee the outcome of
15  a case that has reasonable doubt.  This is what they have done in
16  this case.  They made sure the reasonable doubt was withheld to
17  ensure a guilty verdict.

18         This is not a democratic verdict.  This is a
19  bureaucratic verdict.  It is a corrupt verdict.  Watch me prove
20  it.  Raise your hand if you are an elected official with the
21  official capacity in this court.  Like I expected, no one has
22  raised their hand.  That means that this is not for the people or
23  by the people.  This is for the political party and by the
24  political party.  This is bureaucracy.

25         I should not get life in prison, because AV-2 said --

1    said that I -- that the false allegations happened because she

2    was white, then came to trial and said it happened because she

3    wanted to -- he wanted to make money.  She told the police that

4    we had consensual sex, then came to trial and said it was not

5    consensual.  She is obviously lying.  The jury was never told

6    these facts.  AV-1 said, "I believed he was a police."

7            MR. SWEET:  Your Honor, I object to the use of the

8    names.  If he could use "AV" --

9            THE COURT:  I'll certainly ask that the court reporter

10   simply refer to the victims as AV-1 and AV-2.

11           And, Mr. Zuberi, if you would just refer to them as

12   that, I would appreciate it.

13           MR. ZUBERI:  Okay.  A (pause) -- false victim 1 said,

14   "I believed he was a police officer," then at trial said she did

15   not.  Which one is true?  Is any of it true?  She also could not

16   fit through the tiny slot that she claimed she escaped from.  If

17   she cannot fit, it is not true.  She is lying.

18           She also said that defendant allowed her to listen to

19   music while she was being kidnapped.  Who would want to listen to

20   music if you are being kidnapped?  Listening to music implies you

21   are happy.  I guess she was happily listening to music while

22   handcuffed and being kidnapped.  This makes no sense.

23           I should not get life in prison, because I have a --

24   because I have a father who served in the U.S. Navy and is in his

25   late 60s.  This case has -- this case has had an effect on his

1    health.

2              I should not get life in prison, because I am my mom's

3    last son.  Her other son was murdered.

4              I should not (pause) -- I should not get life in

5    prison, because I have two sons (pause) -- I have two sons who I

6    love more than I love myself.  I want to see them.  I want to hug

7    them.  I have raised them for -- from birth until the day the FBI

8    came.  They need their father.

9              My jail number is 0015098.  For anyone who wants to

10   know the truth, I am located at 787 West 8th Street, Medford,

11   Oregon, 97501.  I may be transferred somewhere else pretty soon.

12   My new slave number will be 70127510.  I do not know where they

13   will send me.

14             I do not deserve life in prison.  I hope the President

15   of the United States looks into this case and finds that I -- I

16   did not receive a fair trial; therefore, the United States

17   Constitution has been violated.  He will see the overwhelming

18   reasonable doubt, and I hope he punishes those who engaged in

19   corruption:  Jeffrey Sweet, Nathan Lichvarcik, Marco Boccato,

20   Michael Bertholf, Travis Gluesenkamp, Chris -- Christopher

21   Giovanetty, Suzanne Miles, and Amy Potter.  These people feed the

22   criminal justice system human being after human being.  They

23   destroy family after family, where they hunger for more and more.

24   They have no remorse.  They are nothing but political, corrupted

25   tyrants.

```
 1              Thank you.

 2              THE COURT:  All right.  Mr. Zuberi, anything further

 3      from -- from you?

 4              MR. ZUBERI:  What did you say?

 5              THE COURT:  Anything further?

 6              MR. ZUBERI:  No.

 7              THE COURT:  Anything further from the Government?

 8              MR. SWEET:  No, Your Honor.  Thank you.

 9              THE COURT:  All right.  I'll adopt the sentencing

10      guideline calculation by the Government -- or by the pre-sentence

11      report, including an adjusted offense level of 46.

12              MR. SWEET:  And, Your Honor, I'm sorry.  Ultimately was

13      it -- it was 48.

14              THE COURT:  40 -- it's not -- yes, but the combined

15      adjusted offense level is 48, leaving us with a total offense

16      level of 43.

17              MR. SWEET:  After the operation of the guidelines, yes.

18      Thank you.

19              THE COURT:  The criminal history category is 3.  The

20      advisory guideline range for Counts 1 and 3 is life.  That is

21      what the Government's asking for, and obviously it's a (pause) --

22              MR. ZUBERI:  Your Honor, I -- I need to take a bathroom

23      break.

24              THE COURT:  Okay.  We'll be in recess.

25              (Recess:  2:14 - 2:18)
```

1          THE COURT:  All right.  So here are the things that,

2     you know, somewhat strike me about the case that are -- give it

3     some uniqueness and support my ultimate finding.

4          As a preliminary matter, I do want to say the things

5     that strike me about the case and give me some hope are the

6     courage of both Adult Victim 1 and Adult Victim 2, who were

7     willing to come forward under such, you know, difficult

8     circumstances.  I know it took a lot of courage to do so,

9     especially with the threats that had been leveled against them.

10         The other thing that really strikes me is, I can't

11    remember the witness's name, but she was the witness on her way,

12    dressed as Rosie the Riveter, to a Cosplay convention and took

13    the time to stop and open up her door to a hysterical, in shock

14    Adult Victim 1.  I -- it just gave me an incredible boost in the

15    human spirit to see that a woman would stop to give aid in such a

16    frightening set of circumstances.  And, you know, if there's

17    anything I would take away from this case that was positive, in

18    addition to a lot of remarkably good investigative work by law

19    enforcement, it really is that -- that piece of the case where

20    you realize that there are good people out there willing to help

21    somebody in a desperate situation.

22         That's about as far as my hopefulness goes in this

23    case, though, Mr. Zuberi.  I'm not going to spend time trying to

24    reason with you.  It would be a ridiculous fool's errand to try

25    to convince you that your assessment of this case is so far off

1    the truth.  I mean, it -- it is as if we are living in different

2    universes in terms of the evidence that came through in this

3    case.

4            I mean, I've been involved in the criminal justice

5    system for -- for 35 years.  I've seen a lot of horrific

6    behavior, horrifically violent behavior.  Typically that involves

7    somebody who's extremely mentally ill, who is off their

8    medication and can't control their psychoses, somebody who, you

9    know, is on some controlled substances, no longer seems to have

10   control of their emotions, their outbursts.  Terrible things

11   occur.  But typically by the time somebody is in front of me for

12   sentencing, they can evaluate their conduct, they can look back

13   and be ashamed of their behavior, they can show remorse towards

14   the victims that they've injured.

15           You're incapable of that.  I mean, I really -- you're a

16   predator.  You're a dangerous predator.  And what really impacts

17   my decision here today is going back historically and looking at

18   how your behavior has evolved over time.  We look at when you

19   were 23 years old, you sexually abused a 16-year-old.  When you

20   were 26, you grabbed another minor female, beat her and raped

21   her.  That was in California.  You received a sentence for that.

22   The words of the judge to you at that time, I read them, they're

23   chilling.  You had an opportunity to change.  He asked you to use

24   that opportunity.

25           And where did we go from there?  There is a series of

1  evidence showing that you were following, stalking,

2  photographing, and searching for women victims throughout the

3  community.  Ultimately you go up to -- well, no.  First you

4  kidnap a woman here in the local community, take her out into

5  back roads, beat her and rape her.  Your next step is to start

6  traveling up to Seattle, kidnapping someone, bringing them down,

7  and locking them in a cell in your garage, beating her and raping

8  her.

9           The next step, I have no idea what it would be.  Well,

10  I do.  I think almost everybody in this room would believe your

11  next step was to murder the next victim, because you could not

12  possibly keep leaving them around in cells in your house, in the

13  community.  But that's never going to happen.  You simply cannot

14  be in the community.

15           I am going to impose a life sentence on Count 1 and 3.

16  They're consecutive to each other; Count 2, 120 months

17  consecutive to Count 1 and consecutive to Count 3; Counts 4

18  through 6 are 180 months each, they're consecutive to each other

19  and they're consecutive to Counts 1, 3, and 2; all sentences to

20  be consecutive.

21           With regard to the firearm and ammunition charges 4

22  through 6, I am finding these are separate criminal episodes.

23  The ammunition and the guns were located in separate areas.  I

24  mean, certainly the other counts, Counts 1 and 3, are clearly

25  separate criminal episodes with separate victims.

1    The gravity of the charges, the gravity of the

2  evidence, the planning, the predation does call for consecutive

3  sentences on all counts.  It will be followed by, on Counts 1 and

4  3, five years of supervised release; Count 2, lifetime of

5  supervised release; Counts 4 through 7, three years of supervised

6  release.

7    Although I don't believe you will be getting out of

8  custody, if for some reason you are out of custody on supervised

9  release, I am adopting all conditions set forth in the

10  pre-sentence report.

11    There is a $100 assessment on each count.

12    And then restitution, how are we arriving at a

13  restitution figure?

14    MR. SWEET:  Thank you, Your Honor.  Your Honor, the

15  Government would ask that restitution be ordered.  We would ask

16  for 90 days, that a hearing be set in 90 days.  We do need to

17  follow up with Adult Victim 1 and Adult Victim 2 regarding an

18  amount.

19    THE COURT:  All right.  The Government will have

20  90 days to present a restitution amount.  We'll set a hearing in

21  90 days.  What date will that be?  Okay.  April 4th we have a

22  calendar here in Medford.

23    Mr. Zuberi, the Government will send you the

24  restitution request.  You'll have an opportunity to object to

25  that.  We will transport you for any hearing if there's not an

1    agreement as to the restitution amount.  Okay?

2              Is there any -- yes.

3              MS. MILES:  Yeah.  If I may.  I just am conscious of

4    the Ninth Circuit's recent decision in *Montoya* asking that the

5    Court read aloud conditions of supervised release.  Given that

6    this is a pro se defendant, I know it's tedious, but I would ask

7    the Court to either read those out loud, that includes both the

8    mandatory and the special conditions, or ensure that Mr. Zuberi

9    has had an opportunity to review those and is expressly waiving

10   that reading.

11             THE COURT:  I'll read them out.  Mr. Zuberi, it is my

12   hope for the community that you not be released from custody, but

13   if you are released from custody, there would be some conditions

14   placed on you.

15             The mandatory conditions are that you must not commit

16   any federal, state, or local crime.  You must not unlawfully

17   possess controlled substance.  You must refrain from the unlawful

18   use of any controlled substance and submit to drug testing within

19   15 days of release or periodic drug tests thereafter.  You must

20   cooperate with the collection of DNA evidence as directed by the

21   probation department.  You must comply with the requirements of

22   the Sex Offender Registration and Notification Act as directed by

23   your probation office, Bureau of Prisons, or any other state

24   offender registration agency in which you reside or work.  You

25   must make restitution in accordance with statutes.

1        The standard conditions of supervision apply, which

2  require you to report to the probation department in the federal

3  judicial district where you reside within 72 hours of your

4  release.  After reporting to the probation office, you will

5  receive further instructions from the probation officer about how

6  and when you must report.

7        You must not knowingly leave the federal judicial

8  district where you are authorized to reside without first getting

9  permission from the court or the probation officer.  You must

10  answer truthfully all questions asked by your probation officer.

11  You must live in a place approved by the probation officer.  You

12  must notify them of any change in residence at least ten days

13  before any change or 72 hours of becoming aware of any change.

14  You must allow the probation department to visit your home or

15  elsewhere.  You must work full-time or have lawful employment or

16  be a full-time student.

17        You must not communicate or interact with someone you

18  know who's engaged in criminal activity or someone who's been

19  convicted of a felony.  If you are arrested or questioned by a

20  law enforcement officer, you must notify the probation office

21  within 72 hours.  You must not have any firearms, ammunition,

22  destructive devices, or dangerous weapons in your -- upon your

23  person or in your residence or in your possession.  You must not

24  act or make any agreement with a law enforcement agency to act as

25  a human -- act as a human source or informant.  You must follow

1    the instructions of the probation department.  You must -- if the

2    probation officer determines that you pose a risk to another

3    person, the probation officer may require you notify the person

4    about that risk.

5           MR. ZUBERI:  Yeah.  I've already read these.

6           THE COURT:  Well, I'm going to keep reading them,

7    because I'm required to.

8           Special conditions:  You must submit your person,

9    property, house or residence, vehicle, or papers, or office to a

10    search.  Failure to submit to a search would be grounds for

11    revocation.

12           You must not communicate or otherwise interact with any

13    individuals identified in the indictment as Adult Victim 1 or

14    Adult Victim 2, any of the witnesses to the case, or any of the

15    jurors.  You must not obtain or possess -- you must not obtain or

16    possess any identification without prior written approval from

17    the probation officer.

18           You must engage in mental health evaluation and

19    treatment.  You must participate in a sex offense -- sex

20    offense-specific assessment.  You must participate in a sexual

21    offender treatment.  You must be -- you will be subjected to

22    periodic polygraph testing.

23           You must not have any direct contact with any child

24    under the age of 18, not including your own children, without

25    permission of the probation office.  You must not communicate

1    with any child under the age of 18.  You must not go to any

2    places where children under the age of 18 are likely to be, or go

3    to any place for the primary purpose of observing or contacting

4    children under the age of 18.  You must not have association

5    with -- associate with prostitutes.

6           There's financial conditions, including consenting to

7    allow the probation officer to review your financial information

8    or any accounts.  You must not get any credit account -- open any

9    credit accounts without their permission.  You must not apply for

10   any loans or enter into any residential or business lease

11   agreement without their approval.

12          So those are the conditions of supervision in the event

13   supervision were to take place.  Do you have any questions about

14   that?  All right.  You're shaking your head "no."

15          Is there anything else we need to discuss?

16          MR. SWEET:  There was just one brief matter, Your

17   Honor, and that is essentially the Government is seeking the

18   Court's assistance in the Government is going to contact Apple to

19   try to have that video removed from Mr. Zuberi's iCloud, the

20   video of him assaulting Adult Victim 2.  We do not believe at

21   this point anyone else can access it; however, what I would ask

22   Your Honor is if the Court would consider putting in the judgment

23   language that the video shows the sexual assault of a victim.  I

24   can provide -- I have for the Court the image number and the

25   iCloud account.  And if that could be in a sealed part of the

1    judgment, Your Honor, I would send that to Apple.  If they do not

2    comply, I will (indiscernible) an All Writs Act to the Court

3    asking it to compel them to comply.  If that's acceptable, Your

4    Honor, I can -- I have that information for the Court.

5            THE COURT:  It is.  We'll make that part of the

6    judgment.

7            MR. SWEET:  Thank you, Your Honor.

8            THE COURT:  Anything else, Mr. Zuberi?

9            MR. ZUBERI:  I -- I just need all the things that I've

10   requested.  I definitely need the jury instructions, because

11   there's a lot of corruption in this case and it needs to be

12   exposed.

13           THE COURT:  All right.  I'm not releasing that to you

14   as part of this proceeding, but I am appointing counsel to

15   represent you at this stage in your appeal.  I'm appointing

16   counsel to immediately file a notice of appeal on your behalf.

17   That notice does need to be filed within 14 days.  If for some

18   reason counsel cannot be quickly brought onto the case, I will

19   extend the notice -- the appeal notice period by 14 days from the

20   day on which counsel becomes actively appointed to the case.

21           MR. ZUBERI:  I have a notification of appeal, but I

22   can't represent myself, right?

23           THE COURT:  You can certainly file your own

24   notification of appeal if you wish.

25           MR. ZUBERI:  Well, I have one here.

 1                    THE COURT:  I am appointing counsel.  They may want to
 2       file an additional notification.  Do you have it filled out?
 3                    MR. ZUBERI:  I have it as a motion.
 4                    THE COURT:  Okay.  You know, it's -- I don't know how
 5       to advise you on how to file a notice of appeal other than it has
 6       to be filed with the District Court Clerk.  If you want to hand
 7       that up, if it's filled out, we can file it on your behalf, but I
 8       am appointing counsel to also file their notice of appeal.  We'll
 9       notify the Federal Defenders immediately.
10                    All right.  Count 7 was dismissed, Ms. Pew, so there's
11       no sentence on that.
12                    All right.  Is there anything else we need to discuss?
13                    MR. SWEET:  Nothing for the Government, Your Honor.
14                    MR. ZUBERI:  No.
15                    THE COURT:  Okay.  Thank you, folks.  We'll be in
16       recess.
17                    MR. SWEET:  Thank you, Your Honor.
18                    (Proceedings adjourned at 2:34 p.m.)
19
20
21
22
23
24
25

1                    **C E R T I F I C A T E**

2

3              I certify, by signing below, that the foregoing is a

4       true and correct transcript of the record, taken by stenographic

5       means, of the proceedings in the above-entitled cause.

6              A transcript without an original signature, conformed

7       signature, or digitally signed signature is not certified.

8

9              DATED this 10th day of March 2025.

10

11

12                            /s/ Kellie M. Humiston

13                            Kellie M. Humiston, RMR, CRR
                              Official Court Reporter
14                            Certificates Expire:  9/2027

15

16

17

18

19

20

21

22

23

24

25